IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| BLAINE HARRINGTON III )<br>    Plaintiff/Counterclaim Defendant )<br>)<br>v. )<br>)<br>360 ABQ, LLC d/b/a 360 VENTURES )<br>    REAL ESTATE )<br>)<br>    Defendant/Counterclaim Plaintiff. ) | Case No. 1:22-cv-00063-LF-JHR |

**RESPONSE OF DEFENDANT/COUNTERCLAIM PLAINTIFF 360 ABQ, LLC IN OPPOSITION TO COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS**

**I. INTRODUCTION**

Consistent with and in furtherance of his scheme to extort large sums from numerous persons who download photographs from the web without knowledge or information that suggest he is the owner of copyright in such photos, Mr. Harrington asks the Court to dismiss Defendant's Counterclaims and to strike its affirmative defense of misuse of the copyright law [Doc. 7]. As shown below, Mr. Harrington has failed to show that 360 ABQ, LLC ("360") has not adequately pled its Counterclaims [Doc. 5], in which it is seeking:

    1) A declaratory judgment that Mr. Harrington's misuse of the copyright law precludes his claim for copyright infringement (Counterclaim Count I);

    2) An award of damages for Mr. Harrington's violation of the New Mexico Unfair Practices Act ("NMUPA") (Counterclaim Count II); and

    3) Damages for Mr. Harrington's prima facie tort (Counterclaim Count III).

Nor has he shown any basis for striking 360's affirmative defense of misuse of copyright, which s well-supported by the facts alleged by 360 in support of that defense.

Mr. Harrington's introductory assertions about his own professional accomplishments are here irrelevant; and his accusation that 360 is "squandering the Court's time/resources with fanciful conspiracy theories"[1] (Mr. Harringtons' Motion, p.2) is belied by Mr. Harrington's history of threatening hundreds and suing scores of defendants who refuse to settle on his excessive demands, as part of a scheme to extort unreasonable amounts from unwitting victims, as alleged by 360 [Doc. 5 ¶¶1-10]. 360's well pleaded allegations, and all reasonable inferences drawn from them, are presumed to be true for the purpose of deciding Mr. Harrington's motion. See Smith v. United States, 581 F. 3d 1090, 1097-98 (10th Cir. 2009); Clark v. United States, 2014 WL 7653392, *3 (D. N. Mex. Sept. 25, 2014).

## II. BACKGROUND FACTS

Mr. Harrington recites eight numbered statements in support of his motion [Doc. 5, pp, 2-3], all of which appear to be accurate; but none of which undermine 360's Counterclaims. Although Mr. Harrington makes reference intermittently in his motion to some of the fact allegations in 360's Counterclaims, he makes no effort to acknowledge the facts, that support 360's claims, namely that he has acted consciously to set up or lure members of the public to innocently download photos so that he can threaten and sue them to collect amounts vastly in excess of their fair value. While all these claims are subject to being proven at trial, the facts alleged by 360, as shown below, are well-pleaded, i.e., they are set forth as facts, not as legal conclusions or as speculations; they are based on information known to 360 and its counsel or reasonably inferred from such information. Most of that information is publicly available, including the number of cases for copyright infringement Mr. Harrington has filed in the past several years; and in some instances the value he or other courts have placed on use of his

---

[1] 360 has made no allegation of conspiracy against Mr. Harrington or others in its Counterclaims.

2

photographs by those who download them for use on their websites or social media without knowledge of Mr. Harrington's claim to own copyright in such photos.[2]

In support of its Counterclaims 360 has alleged that Mr. Harrington is engaged in a business by which he "knowingly allows" his photographs to be available on the internet on websites that provide no information identifying him as the photographer and copyright owner, monitors use of his photographs to identify those who download them, and then threatens to sue them for amounts that vastly exceed their market value (Counterclaim, ¶1); that he does this to coerce persons to settle for exorbitant amounts to avoid the costs of defense which he knows exceed the "tribute" he demands (Id. ¶3); that he has filed such suits in at least 75 instances, which must represent a small portion of those he threatens, which on information and belief are in the hundreds (Id. ¶2)[3]; and that he has done exactly these things in first threatening and suing 360, employing exactly the same tactics, and demanding the same amount of $30,000 he is currently demanding of all he threatens to avoid litigation (Id. ¶5)[4]. In doing this he is engaged in misuse of the copyright law (Id. ¶¶ 12-13), causing injury to 360 and the public by knowingly engaging in the scheme described in 360's Counterclaims (Id. ¶¶15-16); and by engaging in such conduct has caused tortious injury to 360 (Id. ¶¶18-19).

---

[2] The copyright infringement cases he has filed in the United States are all accessible through PACER. A number of those cases have resulted in decisions on a variety of motions or discovery issues, but to the knowledge of 360's undersigned counsel, none have gone to trial.

[3] It is reasonable to believe based on known and alleged facts that most targets of his threats settle quickly, without litigating, to avoid the cost of defense. See 360's Counterclaim, ¶ 2.

[4] Mr. Harrington has sent identical letters to five other alleged infringers as a prelude to cases now pending in this Court. See Adler Medical et al. v. Harrington, Case No 1-22-cv-00072-SCY-LF and Harrington v. American Quality, Home Inspection, LLC, 1-22-cv-00057-GBW-KK.

It is noteworthy that in one of the recent cases brought by Mr. Harrington against another alleged infringer of another of his photographs, under essentially identical circumstances as all other claims he has made of which undersigned counsel has knowledge, Mr. Harrington has offered judgement to the target of his claim for copyright infringement on exactly the same counterclaims as are alleged by 360 in the current action. See Harrington v. Monica Boehmer DDS, PC, Case No. 120-cv-01111-JB-JFR. When his offer in that case was accepted, judgment was entered in favor of the counterclaimant. While 360 is not asserting that the judgment in that case has preclusive effect in the present matter, it nonetheless indicates Mr. Harrington's recognition of the sufficiency of the same allegations of 360's counterclaims in the present case.

### III. LEGAL STANDARDS

#### A. Rule 12(b)(6) Motion to Dismiss

Mr. Harrington's discussion of the pleading requirements applicable to his motion to dismiss is generally correct, but incomplete (Motion to Dismiss, p. 4). He neglects to explicitly mention that not only the well-pleaded facts, but all reasonable inferences drawn from those facts, are to be treated as true and interpreted in favor of the pleader. See Smith v. United States and Clarke v. United States, cited above at p. 2. He also fails to mention that the decisions in Twombly and Iqbal and their progeny were not intended to change the basic tenets of notice pleading embodied in Rule 8, F.R.C.P., i.e., that a claimant must allege facts sufficient to satisfy the required elements of a claim and allow the defendant to understand and prepare to defend; and to allow the court to weed out clearly inadequate (implausible) claims at the outset. See Bell

Atlantic Corp v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007); Ashcroft v. Iqbal. 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).[5]

### B. Rule 12(f) Motion to Strike Defense.

Mr. Harrington correctly notes that motions to strike affirmative defenses are disfavored (Motion to Dismiss, p. 4). The hurdle to dismissing an affirmative defense is extremely high: "To strike a defense, its legal insufficiency must be 'clearly apparent.' A court 'must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" Wells v. Hi Country Auto Group, 982 F. Supp, 2d 1261,1263 (D.N. Mex. 2013), quoting Friends of Santa Fe City v. LAC Materials, Inc., 892 F. Supp. 1333, 1343 (D.N. Mex 1995),

### IV.  ARGUMENT

### A.  360 has sufficiently pleaded its claim seeking a declaratory judgment.

Mr. Harrington concedes copyright misuse is an equitable defense to an action for infringement (Motion to Dismiss, p.5); He only now contends that 360 has not adequately alleged the elements of the defense for the purpose of seeking a declaratory judgment denying his infringement claim. He argues that 360's counterclaim "is missing the 'predicate' of a misuse claim defense," because 360 has not alleged he was "using the copyright monopoly to control something the monopoly does not protect." (Id., p. 6). In that, Mr. Harrington is simply wrong, choosing to ignore 360's pleading, and also ignoring the pleading standard that its allegations,

---

[5] "To survive a motion to dismiss" a claim does no need to contain "detailed fact allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, supra at 678, quoting Bell Atlantic Corp v. Twombly, supra at 555. As the Tenth Circuit Court of Appeals has repeatedly noted, the decision in Twombly did not impose a new, heightened pleading standard on plaintiffs, but was apparently intended to weed out speculative claims. Smith v. United States, supra at 1104, quoting from Robbins v. Oklahoma, 519 F. 3d 1242, 1247 (10th Cir. 2008).

and all reasonable inferences therefrom, be read in a light most favorable to the pleader. Moreover, none of the cases cited by Mr. Harrington can fairly be understood to bar 360's declaratory judgment claim.

360 has plainly (and repeatedly) alleged that Mr. Harrington is engaged in a scheme that is extortionate, i.e. to threaten and sue innocent infringers for amounts hugely disproportional to the value of their claims in order to extort settlements from his targets – such as 360 – who Harrington believes will succumb to his threats and pay amounts much greater than his claims are worth, rather than incur even higher defense costs. That his scheme often works does not legitimize it. Nor does it suggest that 360 has not adequately stated its claim.

360's counterclaim does not use the exact verbiage Mr. Harrington asserts is necessary to state a claim, i.e., that the alleged offender – here Mr. Harrington – has attempted to use his copyright to secure something "not granted by the copyright office (sic) and is contrary to public policy to grant." (Id.). But 360 has alleged the equivalent – certainly use of a copyright to extort excessive amounts from unwitting infringers constitutes improper use of Mr. Harrington's copyright monopoly beyond the purpose for which it is intended and is contrary to public policy. The same concerns are at the heart of antitrust laws that prohibit predatory pricing by businesses in the exercise of monopoly power. See, e.g., Pacific Bell Telephone Co. v. Linkline Communications, Inc. 555 U.S. 438, 452-55, 129 S. Ct. 1109, 122-24 (2009) (discussing the purpose of Section 2 of the Sherman Act's prohibition of monopoly pricing).

It is significant to recognize that courts today regularly impose minimum amounts of statutory damages against those who download an image of a photograph from the web, even if they find the use by the infringer not to be legally innocent. See, e.g., Golden v. Michael Grecco Productions, Inc. 524 F. Supp. 3d 52, 67 (E.D.N.Y. 2021) (Garaufis, J.) (awarding the plaintiff

6

photographer $750 in statutory damages, even though finding the person who downloaded the plaintiffs' photo was not an innocent infringer, but one who had acted in good faith, and denying plaintiff's request for attorneys' fees). Consistent with Judge Garaufis's decision in Golden, the district court in ME, Production, Inc v. Ahmed, 289 F. Supp. 3d 760,764 (W.D. Va. 2018) stated that its award of minimum statutory damages (not treating the defendant as an innocent infringer) was "consistent with a 'recent trend in courts across the country…to award the minimum statutory award of $750.00 per violation' in infringement cases brought by 'copyright holders who seek copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream and [who] file mass lawsuits against anonymous Doe defendants with the hopes of coercing settlements,'" citing Malibu Media, LLC v. [Redacted}, 2017 WL 633315 at *3 (D, Md. Feb. 15, 2017).[6]

In another similar case, in which the court rejected the "de minimus" use defense of one who had used a photograph of the Indianapolis skyline taken by a lawyer/photographer which had been included as part of a website purchased by the defendant, concurring Circuit Judge Clifton said that, given the plaintiff's penchant for filing copyright infringement cases, supporting his reputation as a "copyright troll," "nothing in the facts as described to us supports anything more than an award of statutory damages in a limited amount, not in any amount that should encourage further pursuit of this claim." Bell v. Wilmott Storage Services, LLC, 12 F. 4th 1065, 1081 (9th Cir. 2021) (Clifton, J., concurring).

It is a core tenet of copyright law that, as a matter of constitutional principle, the grant of rights to creators of copyrighted works that allow them to profit from their works is of secondary

---

[6] There are numerous reported decisions in the somewhat notorious Malibu Media cases, brought in different courts throughout the country, two of which were cited in Mr. Harrington's Motion to Dismiss, at pp. 5 and 7.

importance, subserving the primary purpose of copyright to benefit the public by offering incentives to creators to make their works available to the public. See, e.g., New York Times Company, Inc. v. Tasini, 533 U.S. 483, 519, 121 S. Ct. 2381 (2001). This reality underscores and supports 360's claim, giving substance to the reasonable inference from its allegations that Mr. Harrington's efforts to demand extortionate amounts, i.e., the equivalent of predatory pricing, is outside the purpose for which a copyright is awarded to him for his pictures.

Cases cited by Mr. Harrington do not support dismissal of 360's request for a declaratory judgment. It has clearly alleged he was using his copyright to further his scheme of extortion, in which he demands $30,000 from the targets of his infringement claims. In Energy Intelligence Group, Inc. v. CHS McPherson Refinery, Inc., 300 F. Supp. 3d 1356 (D. Kan. 2018), the court considered various motions for summary judgment – after discovery had taken place and two years after the case had been filed. Plaintiff sued when defendant made copies of its publications after its license had expired, and it had refused to renew based on plaintiff's standard price schedule. There was no "scheme" showing that plaintiff was abusing defendant or others in any way, and so based on the factual record, the court granted summary judgment denying the defendant's affirmative defense of copyright misuse. The court's rulings in Home Design Services v. B&B Custom Homes, LLC, which Mr. Harrington cited to an internal court record (Motion to Dismiss, p. 5) and then as 2008 U.S. Dist. LEXIS 55980, *13 (D. Colo.) (Id. p. 7), seem to have nothing to do with the present issue. First, whether or not a plaintiff has successfully litigated infringement claims in some cases does not establish, as a matter of law, that he has not misused the copyright law in others. And for present purposes, to the best of

undersigned counsel's knowledge, Mr. Harrington has never successfully litigated a copyright infringement case to a trial verdict.[7]

**B. 360's state law claims are not preempted by Section 301 of the Copyright Act are sufficiently pleaded.**

Mr. Harrington's contention that 360's state law claims are preempted by Section 301 of the Copyright Act are is simply wrong, reflecting a misunderstanding of that statute and a disregard for 360's claims. 360 has not asserted a claim for copyright infringement, nor a claim that is in any way the equivalent of a claim for copyright infringement, and Section 301 of the Copyright Act has no application whatsoever to its counterclaims.

The fact that 360 has filed its counterclaims in response to Mr. Harrington's infringement claim does not make its counterclaims in furtherance of rights "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship…" 17 U.S.C. § 301(a). 360 is not claiming rights in any work of authorship. Its counterclaims are predicated on the misconduct of Mr. Harrington, plainly alleged in its pleading, and constitute "subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103…" 17 U.S.C. § 301 (b)(1).

Mr. Harrington's assertion that 360's "state-law claims no doubt 'infringe one of the exclusive rights provided by federal copyright law,'" citing and quoting from Harold's Stores, Inc v. Dillard Department Stores, Inc., 82 F.3d 1533, 1543 (10th Cir. 1996), is also simply wrong;

---

[7] It is believed he has won default judgments against those who for whatever reason did not defend; and has won motions for judgment in which the defense posed was of limited scope, and even then was awarded an amount far less than he was demanding. See Harrington v. Aerologic Ballooning, LLC, 2019 WL 2613334, *12. (D. Colo.Apr. 25, 2019), in which the court awarded Mr. Harrington $3500 on a record suggesting defendant had needlessly engaged in questionable litigation conduct.

and neither his assertion nor the decision in Harold's Stores have any bearing on 360's counterclaims, which do not seek a remedy for the infringement of rights protected by or equivalent to copyright. Harold's Stores was a copyright infringement and antitrust action brought by one retailer against another, in which the Court of Appeals affirmed a jury verdict and entry of judgment for the plaintiff. The Court's discussion of the preemptive provisions of the Copyright Act were in support of its finding that plaintiff's state law antitrust claim was not preempted by the Copyright Act 82 F.3d at 1543-44. More importantly, the fact that 360 is not asserting a claim for copyright infringement or any equivalent rights renders the Tenth Circuit's decision in Harold's Stores without any bearing on the validity of 360's state law claims.[8]

**1. 360 has sufficiently pleaded a claim for violation of the New Mexico Unfair Practices Act.**

In its counterclaim for violation of the UPA 360 has alleged that, in demanding that it pay a license fee of $30,000 for the image at issue, Mr. Harrington was knowingly misrepresenting the value of the image as a part of his business scheme to demand an extortionate payment from 360 (and others) to pay an amount Mr. Harrington knew vastly exceeded the fair value for the use of the photo made by 360 (and others who had downloaded similar photographs for similar purposes). All this was done in a way that was intended to, and would have the effect of, deceiving 360 (and other recipients of his demands) into believing the fair value of the use of his photos were much higher than is the case (360's Counterclaims, ¶¶ 1-2, 6-10, 13). All this satisfies the requirements to allege deception or unfair or unconscionable practices in violation of

---

[8] Similarly the language quoted by Mr. Harrington at page 10 of his motion, from SCO Group, Inc. v. IBM, 874 F.3d 1172, 1189 (10th Cir. 2017), has no bearing on the issue of preemption applied to 360's counterclaims.

the UPA, 1978 NMSA § 57-12-1 et seq. The Act provides private remedies to persons "likely to be damaged by an unfair or deceptive trade practice…" Id., § 57-12-10 (A).

The UPA is a remedial statute, to be interpreted liberally to prevent the harm to which it is directed. See M.D. Lohman v. Daimler-Chrysler Corporation, 142 N.M. 437,443, 166 P. 3d 1091, 1097 (N.M. Ct. App. 2007). Here the unfair and unconscionable practices about which 360 complains are committed in connection with Mr. Harrington's actions in demanding extortionate prices – which he knows are far in excess of the market value – for licensing his photographs. See the letter his attorneys wrote to 360 demanding a $30,000 license fee, referenced in its counterclaim as Exhibit A.[9] This brings his conduct squarely within the ambit of the UPA.

Mr. Harrington's assertion that 360 has not alleged any (his emphasis) misleading statement is belied by his own lawyers' demand letter, as well as by his conduct alleged throughout 360's pleading. He has shown no basis that justifies dismissing 360's UPA claim. Mulford v. Altria Group, Inc., 242 F.R.D. 615 (D.N. Mex. 2007), other than reciting the elements of a UPA claim, which are all satisfied by 360's pleading, provides no support for the dismissal of 360's UPA claim. In Mulford the court denied certification of a class when the plaintiff there was attempting to assert a UPA claim against tobacco companies. The court did not bar the assertion of individual UPA claims--only the certification of a class. It did state, however, that pleading a UPA claim did not require either allegations of detrimental reliance or a link between an individual's purchase of a product and the defendant's deceptive conduct. 242 F. 2d at 622.

---

[9] Mr. Harrington correctly notes that 360's attorney neglected to attach Exhibit A to his Counterclaims, which as described consisted of a demand letter for payment of $30,000 as a license fee and a draft complaint he would file, seeking damages of $150,000, if his demand for $30,000 was not met. He has sent the same letter to those against whom he has filed infringement claims in the cases referenced in footnote 4, supra. Undersigned counsel apologizes for his neglect, and attaches here a copy of Exhibit A referenced in 360's counterclaims.

Nonetheless, should this Court find that there is any pleading deficiency in its UPA claim, 360 requests the opportunity to amend to provide additional specific allegations to support its claim.

**2. 360 has sufficiently pleaded its claim for prima facie tort.**

360 has alleged the elements necessary to state a claim for prima facie tort, in compliance with the applicable pleading standard discussed above. To state a claim one must allege "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; (4) and the absence of sufficient justification for the injurious act." Beaudry v. Farmers Insurance Exchange, 2018-NMSC-012, 412 P. 3d 1100, 1104, citing and quoting from Lexington Insurance Company v. Rummel, 123 N.M. 774, 945 P.2d 992 (N.M.S. Ct. 1997) (ordering judgment for defendant, dismissing prima facie tort claim, because defendant's acts were expressly permitted under contract entered with plaintiff).

In the instant case 360 has alleged the elements of a claim for prima facie tort, i.e., that Mr. Harrington had threatened and brought a claim to enforce a copyright (Counterclaim ¶5), which of itself would be a lawful act; that he did so with the intention of imposing excessive costs on 360 in furtherance of his effort to extort payment from 360 to allow it to avoid more costly litigation (Id. ¶¶6-7); that in doing so he has caused 360 to incur costs it should not have had to incur, to avoid succumbing to extortion (Id. ¶¶ 9-10); and all done without legitimate justification, (Id. ¶¶ 1-3, 7, 18). As alleged, Mr. Harrington is engaged in a unique version of a protection racket – though carried out in the pretense of his conducting himself as a distinguished travel photographer.

Here Mr. Harrington offers no defense or excuse for his conduct as alleged by 360, other than to disregard the allegations of its counterclaims by contending that 360 failed to allege a

lawful act, despite acknowledging 360's plain allegations that his acts would be legal if not done for improper and extortionate purposes (Motion to Dismiss, p. 14). Then he claims 360 failed to allege intent to injure (Id.), despite it having clearly done so by describing Mr. Harrington's actions and willful efforts to extort money from 360 (360's Counterclaims, ¶¶6, 7, 18). Then Mr. Harrington (quite disingenuously) contends that 360's claim fails to do more than recite the injury element, or to adequately plead an absence of justification for his actions. (Motion to Dismiss, pages 14-15), citing Vanmeter v. Briggs, 2019 U.S. Dist. LEXIS 137292, *9 (D.N. Mex. Aug. 14, 2019), for the proposition that a claim for prima facie tort must do more than "merely recite the elements" of the claim. Mr. Harrington would have the Court ignore that 360 did exactly what the pleading standards would have it do: it eschewed merely reciting the elements of the claim. Rather it provided background facts and context and described specifically the actions that it is complaining of, without relying on conclusory statements, other than to say it was injured by Mr. Harrington's acts by having to hire counsel and incur expenses in effort to avoid paying him extortionate amounts in tribute.

New Mexico's courts, in confirming the existence of a claim for prima facie tort, have said that it "should be used to address wrongs that otherwise 'escape categorization.'" Hagebak v. Stone, 133 N.M. 75, 82, 61 P. 3d 201, 208 (N.M. Ct. App. 2002) (reversing award of summary judgment and permitting plaintiff to pursue a prima facie tort claim in the alternative in a wrongful termination action), citing Schmitz v. Smentowski, 109 N.M. 386,394,785 P. 2d. 726,736 (N.M. Ct. App. 1990). That is exactly the situation here, and 360 should be allowed the opportunity to prove its claim.

No authority offered by Mr. Harrington supports a contrary finding, given 360's detailed allegations supporting its claim. Moody v. Dollar Tree Store, Inc., 2019 WL 3322872 (D.N.

Mex. July 24, 2019), has no bearing on the present matter. There the court found that because the discriminatory conduct alleged by plaintiff was itself unlawful, it could not be the premise of a prima facie tort claim because it could not satisfy the "lawful act" requirement of the tort claim. Moody, supra at *5. Here as Mr. Harrington repeatedly asserts, and 360 acknowledges, his copyright infringement claim, standing alone, would be lawful. His tortious acts consist of his willful, improper use of his copyright claim to set up his threats to coerce payments in excess of the fair value of his photographs, which causes injury to 360 and other similarly situated targets of his claims.

In its counterclaims 360 has given clear notice to Mr. Harrington of the basis for its claim of prima facie tort, and has satisfied the applicable pleading standard. Should the Court find that 360 has not provided sufficient facts and descriptions to satisfy the requirements of a claim for prima facie tort, it requests leave to amend its pleading in order to do so.

**C.  360 has sufficiently asserted the affirmative defense of copyright misuse.**

Although he acknowledges copyright misuse to be a recognized affirmative defense (Motion to Dismiss, p. 5) and seeks dismissal of 360's first counterclaim seeking declaratory judgment that his infringement claim is barred on the grounds that that claim itself is not adequately pleaded, Mr. Harrington does not address the defense separately from 360's request for a declaratory judgment. 360 has shown above that its claim is, at this stage of the proceeding, pleaded sufficiently to withstand dismissal. And certainly its assertion as a well-recognized defense should not be stricken as result of such a highly–disfavored motion. See discussion of standards applicable to pleading affirmative defenses, supra.

360's assertion of its defense is consistent with similar assertions of the misuse defense that have been accepted by courts in the face of motions to strike. See, e.g., <u>Malibu Media, LLC v. Miller</u>, 2014 WL 2619558, * 4-5 (D. Colo. June 12, 2014) (finding that defendant's assertions about plaintiff using the copyright law in service of unlawfully extending its monopoly beyond the scope of the copyright law raised a question of fact for the jury). Similarly, in another <u>Malibu Media</u> case, a judge in the same district found that a "short and plain statement of the affirmative defense [of copyright misuse]…provides notice to a plaintiff, who can then use the discovery process to investigate more fully the factual basis for the claim." <u>Malibu Media, LLC v. Yamaguchi</u>, 2014 WL 2021973, *4 (D. Colo. May 16, 2014). (The defendant there had asserted that plaintiff was "utilizing the copyright laws not for protection of his copyrighted works, but rather as a means of generating revenue, which may exceed the value of the works themselves" – which is exactly, though worded differently, what 360 has asserted in its pleading).

     Mr. Harrington attempts to justify his motion to strike 360's contentions about misuse by saying that he is entitled, as a copyright owner, to sue to protect his rights and recover damages. But that misses the point. His misuse is not the act of threatening or filing suit alone. Rather, it is his extortionate conduct, all plainly alleged, in knowingly allowing his photos to be available on the web, and then conducting the business of extorting amounts far beyond their value, knowing that some will pay exorbitant amounts to avoid incurring even greater costs of defending. That is what warrants 360 having the opportunity to prove his misuse, as either part of its declaratory judgment claim, or as a standalone defense.

**D. 360 is entitled to an award of attorneys fees for being subjected to Mr. Harrington's improper and frivolous motion.**

Dressed up with case citations and argument that ignores 360's pleading, and in instances misstates copyright principles, Mr. Harrington's motion is in furtherance of the same improper bullying purposes he has pursued against hundreds of others.[10] Given his efforts to coerce exorbitant payments from the targets of his threats and lawsuits, and now his baseless motion to dismiss 360's well-pleaded claims and misuse defense, it would be appropriate for the Court to order him to compensate 360 for the legal costs it incurs in opposing Mr. Harrington's motion. This is within the Court's inherent authority in the exercise of control over cases before it. See Chambers v. NASCO, 501 U.S. 32, 42-45, 111 S. Ct. 2123, 2131-33 (1991).

**CONCLUSION**

360 has alleged that Mr. Harrington, when not engaging in his professed profession of an international travel photographer, has been running an extortion racket, by which he attempts to use his copyrights for a purpose not legitimately conferred by the copyright law and cause injury to the targets of his activities, including 360. It has alleged the elements of the three counterclaims it has filed in response to Mr. Harrington's infringement suit. This Court should deny Mr. Harrington's motion to dismiss its counterclaim, and allow 360 to conduct discovery and present evidence in support of its claims in accordance with the rules governing proceeding.

---

[10] The records of actions brought in this Court alone, including cookie-cutter complaints he has filed against many others, almost all of whom settle quickly pursuant to agreements he requires to be kept confidential, evidence Mr. Harrington's litigation tactics.

Should the Court determine that 360 has not adequately alleged the required elements of any of its counterclaims, it requests that it be permitted to file an amended pleading to cure any deficiencies found in its initial pleading.

>Respectfully submitted,
>PEACOCK LAW P.C.
>By: /s/ Jeffrey L. Squires
>Jeffrey L. Squires
>Email: jsquires@peacocklaw.com
>201 Third St. NW, Suite 1340
>Albuquerque, NM 87102
>Office: (505) 998-6116
>Fax: (505) 243-2542