# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BLAINE HARRINGTON, III,

    Plaintiff and Counter-Defendant,

vs.                                                         No. 1:22-cv-00063-KWR-JHR

360 ABQ, LLC d/b/a 360 VENTURES
REAL ESTATE,

    Defendant and Counterclaimant,

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court upon the Mr. Harrington's Motion to Dismiss Counterclaims and Strike Defendant's Second Affirmative Defense **(Doc. 7).** Having reviewed the parties' pleadings and the relevant law, the Court finds that Mr. Harrington's motion is **NOT WELL-TAKEN** and, therefore, is **DENIED**.

## BACKGROUND

    This is a copyright infringement action. Mr. Harrington is a photographer, while 360 ABQ, LLC is a real estate brokerage firm which displayed one of Mr. Harrington's photographs of the Albuquerque skyline without Mr. Harrington's permission. Mr. Harrington alleges that 360 ABQ violated his copyright. 360 ABQ filed counterclaims, asserting that Mr. Harrington misused the copyright system to "extort" money from it through allegedly abusive demands and litigation tactics.

    Mr. Harrington asserts that he created a photograph of the skyline of downtown Albuquerque and obtained a copyright for that photograph. **Doc. 1 at ¶¶ 9, 10**. He alleges he is the owner of the work. *Id*. He asserts that 360 ABQ published the copyrighted work on its

Facebook business website as part of the marketing of its real estate business. 360 ABQ is not licensed to use the photograph.

Mr. Harrington alleged one count of copyright infringement by reproducing, distributing, and publicly displaying the photograph for commercial purposes. **Doc. 1 at ¶ 25**

360 ABQ filed an answer and counterclaim. **Doc. 5.** 360 ABQ alleges that in 2015 it placed on its Facebook page Mr. Harrington's Albuquerque skyline photo. It says its employees found the image through a web search and it did not identify a photographer or copyright owner. Therefore, it alleges it believed it could lawfully display the photograph on its website. 360 ABQ alleges that Mr. Harrington retained a lawyer who sent it a letter asserting that Mr. Harrington owned the copyright in that photograph. The letter demanded that 360 ABQ pay $30,000 in 14 days or he would seek $150,000 in damages in an infringement suit.

It alleges that Mr. Harrington is a "copyright troll." It asserts that Mr. Harrington allows his photographs to be available on public websites without providing copyright notice and threatens to sue people who, without notice of the copyright, download and use his images. It alleges that Mr. Harrington demands "extortionate" settlements in amounts beyond "market value." **Doc. 5 at 5.** 360 ABQ alleges that if a person declines to pay him, Mr. Harrington files suit for copyright infringement. It alleges that Mr. Harrington has threatened hundreds of persons with copyright infringement lawsuits and they have generally paid far beyond "fair value." 360 ABQ alleges that Mr. Harrington has filed at least seventy-five suits. **Doc. 5 at 5.**

360 ABQ alleges it was the target of a broader scheme by Mr. Harrington. It describes the scheme as follows:

- Mr. Harrington has allowed for years his photographs to be available on websites without a copyright or ownership notice;
- Mr. Harrington intends for his photographs to be available on certain websites without copyright notice to induce innocent users to download and use his photographs;

2

- Mr. Harrington hires a service to track those who download and use his photographs;
- He directs his lawyers to threaten or pursue a claim for copyright infringement against those who use his photographs unless they pay an "extortionate" amount to compensate Mr. Harrington for the alleged infringement; and
- Mr. Harrington acted knowingly and willfully to implement this scheme to misuse copyright law and extort money from targets of his scheme.

360 ABQ asserts copyright misuse as an affirmative defense, and asserted the following counterclaims:

- Count 1: Declaratory Judgment for Copyright Misuse;
- Count 2: New Mexico Unfair Practices act, NMSA 1978 § 57-12-1; and
- Count 3: Prima Facie Tort.

Mr. Harrington now moves to dismiss the counterclaims and strike the affirmative defense.

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a counterclaim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a counterclaim must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a counterclaimant's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

Mr. Harrington also seeks to strike the copyright misuse affirmative defense. Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). However, motions to strike affirmative defenses are generally disfavored. *See Friends of Santa Fe County v. LAC Minerals, Inc.,* 892 F.Supp. 1333, 1343 (D.N.M.1995) (citations omitted). To strike a defense, its legal insufficiency must be "clearly apparent." *Id.* (same). A court "must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." *Id.* (same). In deciding a motion to strike, the court bears in mind the purpose of pleading an affirmative defense: to provide the plaintiff with fair notice. *Falley v. Friends Univ.,* 787 F.Supp.2d 1255, 1257 (D.Kan.2011). The decision to strike an affirmative defense rests within the sound discretion of the district court. *Hayne v. Green Ford Sales, Inc.,* 263 F.R.D. 647, 650 (D.Kan.2009). Rule 12(f) is intended to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial. *Hayne,* 263 F.R.D. at 648–49. "[S]triking an affirmative defense is considered a drastic remedy, and the court should only utilize the legal tool where the challenged allegations cannot succeed under any circumstances." *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1259 (D. Kan. 2011) (internal citations and quotation marks omitted).

## DISCUSSION

**I.      Court declines to dismiss or strike copyright misuse equitable defense.**

360 ABQ asserted copyright misuse as both a counterclaim and an affirmative defense. *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1033 (N.D. Cal. 2011) ("There is no consensus on whether copyright misuse can be brought as an independent claim (as opposed to as an affirmative defense) and district courts come down on both sides of the issue."). Mr. Harrington moves to dismiss the counterclaim or strike the affirmative defense. The Court

finds that 360 ABQ's well-pled allegations state a plausible claim or affirmative defense for copyright misuse.

"Copyright misuse is an equitable defense to copyright infringement which precludes the copyright holder's enforcement of its copyright during the misuse period." *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1115 (9th Cir. 2010). "The copyright misuse doctrine is an equitable defense to a copyright infringement action that forbids the use of a copyright to secure an exclusive right or limited monopoly not granted by the copyright office and is contrary to public policy to grant." *Malibu Media, LLC v. Miller*, No. 13-CV-02691-WYD-MEH, 2014 WL 2619558, at *4 (D. Colo. June 12, 2014), *citing Home Design Servs., Inc. v. B & B Custom Homes, LLC,* No. 06–cv–00249–WYD–GJR, 2008 WL 2302662, at *2 (D.Colo. May 30, 2008) (citing 185 ALR Fed 123 and *Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772, 792 (5th Cir.1999)); *see also Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1090 (9th Cir.2005). 360 ABQ must prove that Mr. Harrington "illegally extended [his] monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws." *Malibu Media, LLC v. Miller*, No. 13-CV-02691-WYD-MEH, 2014 WL 2619558, at *4 (D. Colo. June 12, 2014) (quoting In re Indep. Serv. Orgs. Antitrust Litig., 85 F.Supp.2d 1130, 1175 (D.Kan.2000)).

360 ABQ asserts that Mr. Harrington is a "copyright troll" who misused the copyright system through allegedly abusive tactics. An individual may be a copyright trolls when he employ "abusive litigation tactics to extract settlements." *Malibu Media, LLC v. Ramsey*, No. 1:14-cv-718, 2015 U.S. Dist. LEXIS 151273, at *9 (S.D. Ohio May 26, 2015).

"Standing alone, initiating multiple copyright infringement actions and attempting to negotiate settlements does not indicate copyright misuse or copyright trolling." *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-CV-42, 2019 WL 4647305, at *14 (S.D. Ohio

Sept. 24, 2019), *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1374 (D. Kan. 2018); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 998 (C.D. Cal. 2006) ("A plaintiff's "enforcement of its copyrights does not constitute copyright misuse.").

In one of the many *Malibu Media* cases, the district court noted that, "[i]t is certainly true that [the plaintiff] has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement." *Malibu Media, LLC v. Doe*, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, 2014 WL 2581168, at *6 (N.D. Ill. June 9, 2014). "Although a large number of actions for infringement may be relevant to determination of a plaintiff's status as a copyright troll, volume alone is not dispositive." *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-CV-42, 2019 WL 4647305, at *14 (S.D. Ohio Sept. 24, 2019).

Here, 360 ABQ alleges more than the mere fact that Mr. Harrington files or threatens to file cases to enforce his copyrights. It also alleges that Mr. Harrington intentionally allows his images to be posted online without copyright notice and uses a service to track who uses or downloads the image so that he can sue or "extort" money from these "unwitting" users. In addition, it alleges that Mr. Harrington uses abusive litigation tactics and threats, including demanding settlements well in excess of the damages. *Home Design Servs., Inc. v. B & B Custom Homes, LLC*, No. CIVA 06CV00249 WYDGJ, 2008 WL 2302662, at *4 (D. Colo. May 30, 2008) ("Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act."). In other words, 360 ABQ alleges that Mr. Harrington is not using the copyright and legal system for an authorized purpose, 17 U.S.C. § 106, but as a method to derive income from infringement

6

demands or suits. These allegations, taken as true, state a plausible claim that Mr. Harrington has a wrongful motive and misused the copyright or legal system. *See, e.g., Oppenheimer v. ACL LLC*, 504 F. Supp. 3d 503, 511–12 (W.D.N.C. 2020) (finding plausible claim of copyright misuse where "a reasonable jury *could* find Plaintiff is using copyrights to derive an income from infringement suits"); *Malibu Media, LLC v. Miller*, No. 13-CV-02691-WYD-MEH, 2014 WL 2619558, at *5 (D. Colo. June 12, 2014); *Malibu Media, LLC v. Cuddy*, No. 13-CV-02385-WYD-MEH, 2015 WL 1280783, at *9 (D. Colo. Mar. 18, 2015).

Therefore, the Court declines to dismiss the copyright misuse counterclaim or strike the affirmative defense.

## II. **360 ABQ's state law counterclaims are not preempted.**

360 ABQ also asserted a New Mexico Unfair Practices Act claim (Count II) and a prima facie tort claim (Count III). Mr. Harrington asserts that these counterclaims are preempted by the federal Copyright Act. The Court declines to dismiss these claims on the basis of preemption.

The Copyright Act describes the extent to which state common law and statutory causes of action are preempted. It provides, in relevant part:

> (a) [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
>
> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to
>
> . . .

7

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301. "[A] state-law claim is preempted if (1) the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1146 (10th Cir. 2009) (internal quotation and citation omitted).

The Tenth Circuit has explained that although the Copyright Act preempts state copyright law,

> it does not eliminate all state law actions. For example, conduct that may give rise to a federal suit for copyright infringement may also give rise to a state law claim in tort for unfair competition, tortious interference, or breach of contract. However, 17 U.S.C. § 301(a) preempts such claims if "1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. [§§ ] 102 and 103; and 2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. [§ ] 106." *Gates Rubber Co. v. Bando Chem. Indus.,* 9 F.3d 823, 847 (10th Cir.1993). On the other hand, *if* "*a state cause of action requires an extra element,* beyond mere copying, preparation of derivative works, performance, distribution or display, then *the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim.*" Id.

*La Resolana Architects, PA v. Clay Realtors Angel Fire,* 416 F.3d 1195, 1199 n. 2 (10th Cir.2005) (emphasis added). "[T]o correctly analyze [a] copyright preemption argument using the 'extra element' test," this Court must "compare[s] the elements of a claim for copyright infringement to the elements" of the claim for which preemption is argued. *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1543 (10th Cir.1996)

Here, the New Mexico Unfair Practices Act and prima facie tort claims clearly have "extra elements" beyond a copyright infringement claim. To state copyright infringement under the Copyright Act, Mr. Harrington must show "(1) ownership of a valid copyright, and (2) copying of

8

constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv., Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991), *cited in Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1543 (10th Cir. 1996). These are not the elements of a New Mexico UPA claim or prima facie tort claim. Mr. Harrington admits that the elements of claim under New Mexico's Unfair Practices Act under are different:

> To state a claim under the Unfair Practices Act, a claimant must show that: "(1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or misleading any person."

**Doc. 7 at 12** (emphasis omitted), *quoting Mulford v. Altria Grp., Inc.*, 242 F.R. D. 615, 62021 (D.N.M. 2007). A misleading statement can include an omission. *Skenandore v. FIP, LLC*, No. 1:18-CV-00388-MV-LF, 2019 WL 1041338, at *8 (D.N.M. Mar. 5, 2019), *report and recommendation adopted*, No. 1:18-CV-00388-MV-LF, 2019 WL 1318339 (D.N.M. Mar. 22, 2019).

The elements of a prima facie tort include "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; and (4) and the absence of sufficient justification for the injurious act." *Beaudry v. Farmers Insurance Exchange*, 412 P.3d 1100, 1104 (N.M. 2018).

Clearly, the New Mexico UPA and prima facie claims have "extra elements" beyond a mere copyright infringement claim. Moreover, 360 ABQ's state law claims are not equivalent to any exclusive rights within the scope of federal copyright as set forth in 17 U.S.C. § 106. 360 ABQ does not dispute that Mr. Harrington generally has the right to reproduce his work, distribute copies, and display his work publicly. Rather, it asserts that he committed certain tortious acts. The Court concludes that these claims are not preempted.

### III. Court declines to dismiss 360 ABQ's counterclaims for failure to state a claim.

Mr. Harrington also moves to dismiss the Unfair Practices Act (Count II) and Prima Facie Tort (Count III) claims for failure to state a claim.

Mr. Harrington argues that 360 ABQ fails to state a claim under the UPA because it failed to allege a false or misleading statement. Based on this limited objection, the Court declines to dismiss the UPA claim. Mr. Harrington appears to argue that a lack of copyright notice is not a misleading statement. However, a misleading statement can include an omission. *Skenandore v. FIP, LLC*, No. 1:18-CV-00388-MV-LF, 2019 WL 1041338, at *8 (D.N.M. Mar. 5, 2019), *report and recommendation adopted,* No. 1:18-CV-00388-MV-LF, 2019 WL 1318339 (D.N.M. Mar. 22, 2019). Moreover, 360 ABQ alleges that Mr. Harrington made misleading statements in his demand letter.

Mr. Harrington also argues that 360 ABQ failed to plausibly allege each element of a prima facie tort. "The theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances." *Schmitz v. Smentowski*, 785 P.2d 726, 734 (N.M. 1990). The elements of a prima facie tort include "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; and (4) and the absence of sufficient justification for the injurious act." *Beaudry v. Farmers Insurance Exchange*, 412 P.3d 1100, 1104 (N.M. 2018). "The activity complained of must be balanced against its justification had the severity of the injury, weighing: (1) the injury; (2) the culpable character of the conduct; and (3) whether the conduct is unjustifiable under the circumstances." *Hagebak v. Stone*, 61 P.3d 201, 208-09 (N.M. Ct. App. 2002). The Court finds that 360 ABQ has stated a plausible prima facie tort claim.

**IT IS THEREFORE ORDERED** that the Mr. Harrington's Motion to Dismiss Counterclaims and Strike Defendant's Second Affirmative Defense **(Doc. 7)** is hereby **DENIED** for the reasons described in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS
UNITED STATES DISTRICT JUDGE**