IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Case No. 1:22-CV-00063-LF-JHR

BLAINE HARRINGTON III,

    Plaintiff,

v.

360 ABQ, LLC d/b/a 360 VENTURES REAL ESTATE,

    Defendant.

## PLAINTIFF'S RESPONSES TO FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, plaintiff/counter-defendant Blaine Harrington III ("Plaintiff") submits these responses to defendant/counter-plaintiff 360 ABQ, LLC d/b/a 360 Ventures Real Estate's ("Defendant") First Set of Written Interrogatories (the "Interrogatories") as follows:

## INTERROGATORIES

1.    How did you become aware that 360 ABQ had downloaded the image of the Subject Photograph?

**Response:**    In January 2022, Harrington performed a reverse-image search using one of www.google.com, www.bing.com, or www.tineye.com (Harrington does not recall which specific website was used to perform the reverse image search) and identified that Defendant was publishing/displaying the Subject Photograph.

2.    Please describe in detail, the efforts you make and have made for the past five years to identify persons who, without your consent, downloaded images of your photographs from websites other than any website you have set up and maintained?

**Response:** Harrington previously utilized Pixsy to search for and monitor the unauthorized use of his photographs. Harrington would upload certain photographs into the Pixsy database which would then display a list of matching photographs it found online. Harrington would then compare the lists identified by Pixsy with his prior licensing history (his own licenses as well as sales made through one or more stock photography agencies). The photograph at issue in this lawsuit, however, was not found through Pixsy. As stated above, Harrington found Defendant's use of the subject photograph through the performance of one or more reverse image searches on publicly-available sites such as www.google.com, www.bing.com, and www.tineye.com. Other than the above, Harrington has not made other efforts to identify infringers.

3. If you have employed any person or service to monitor the use of photographs you have taken in which you own or claim to own the copyright, please identify such persons or services you have employed since October 2012, and provide the periods of time during which you employed such person or service.

**Response:** From January 2016 through the present, Harrington has maintained an account with Pixsy. As described above, Pixsy technically does not "monitor" the use of Harrington's photographs. Rather, Harrington must login and use Pixsy's technology to upload photographs, search for other uses online, and determine whether any search results are unauthorized. To Harrington's knowledge, Pixsy is not constantly monitoring for unauthorized uses. Harrington has not employed any other person or service responsive to this interrogatory (except for Harrington's own personal use of reverse image search sites such as www.google.com, www.bing.com, and www.tineye.com).

4. What percentage of your total earned income, for each of the years from 2015 through 2021, consists of payments you have received from persons you accused of infringing

copyrights in photographs in which you own or claimed to own the copyright, to resolve and/or obtain a release from you with respect to your accusation or claim of infringement.

**Response:** Harrington objects to this request as not relevant to the claims or defenses at issue in this lawsuit. <u>See, e.g.</u> <u>Home Design Servs. v. B&B Custom Homes, LLC</u>, Civil Action No. 06-cv-00249-WYD-GJR, 2008 U.S. Dist. LEXIS 55980, at *13 (D. Colo. May 30, 2008) ("The fact that the Plaintiff has been successful in protecting copyrighted designs and has generated revenue through litigation would not appear to pertain to the elements of the defense of copyright misuse. The fact that the Plaintiff has litigated claims under the federal Copyright Act and has been successful in that litigation fact does not indicate to this Court that the Plaintiff has engaged in copyright misuse. The Defendants must establish that the Plaintiff extended its purported monopoly beyond the scope of the copyright. I find that litigation revenue of the Plaintiff in other cases around the country does not tend to show that the Plaintiff illegally extended its monopoly beyond the scope of the copyright laws. I find that the information sought by Defendants with regard to Plaintiff's litigation revenue from around the country is unlikely to lead to the discovery of admissible evidence regarding the Defendants' affirmative defense of copyright misuse, based on an extension of a purported monopoly.").

Whether Harrington has been successful in pursuing/settling with alleged infringers and to what extent has no bearing on or relevance to whether Harrington has extended his purported monopoly beyond the scope of the copyrights at issue.

5. Identify all attorneys who have advised you since January 2015 through the present, concerning your rights as the owner of copyright in photographs you have taken.

**Response:** (1) David C. Deal, Esq., The Law Offices of David C. Deal, P.L.C., 1210 Crozet Avenue #1042, Crozet, VA 22932, 434-233-2727; (2) Daniel DeSouza, Esq. and James D'Loughy,

Esq., CopyCat Legal PLLC, 3111 N. University Drive, Suite 301, Coral Springs, FL 33065, 877-437-6228; (3) Sue Jung Nam, Esq., Charles Douglas Moore, Esq., George Volney Granade, Esq., and Michael Robert Reese, Esq., Reese LLP, 8484 Wilshire Boulevard, Suite 514, Los Angeles, CA 90211; (4) Bru_ `. Heurlin, Esq., Heurlin Sherlock, 7320 N La Cholla Boulevard, Suite 154-535, Tucson, AZ 85741, 520-319-1221; (5) Joel Rothman, Esq. and Jonah Adam Grossbardt, Esq., SRIPLAW, 21301 Powerline Road #100, Boca Raton, FL 33433; (6) Amanda Leigh Bruss, Esq., Harmon Seidman Bruss & Kerr LLC, 8728 East 54th Place, Denver, CO 80238, 970-245-9075; (7) Alexander Charles Cohen, Esq., Robbins Geller Rudman & Dowd LLP, 120 E. Palmetto Park Road, Suite 500, Boca Raton, FL 33432, 561-961-2205; (8) Michael George Prestia, Esq., Michael G. Prestia Attorney at Law, 1708 23rd Avenue, P.O. Box 1928, Gulfport, MS 39502, 228-868-6695; (9) Bruce W. Bellingham, Esq., Spector Gadon & Rosen, P.C., 1635 Market Street, 7th Floor, Philadelphia, PA 19103; (10) Ian Bezpalko, Esq., Bezpalko Law Firm, 2721 Sioux Street NW, Albuquerque, NM 87107, 505-341-9353.

6. Identify any website, along with the host of any such website, you have maintained on which you have posted or displayed images of photographs you have taken, since January 2015 through the present. With respect to each website identified, provide the dates during which you kept the website active.

**Response:** (1) https://www.blaineharrington.com/index - website has been maintained/active from approximately September 7, 2010 - present date – hosted by PhotoShelter; (2) https://www.instagram.com/blaineharringtonphoto/?hl=en – website has been maintained/active from approximately January 6, 2016 - present date (though Harrington did not post any content thereto from January 7, 2016 until April 23, 2020) – host unknown; (3)

https://www.facebook.com/blaineharringtonphotography/ - website has been maintained/active from approximately December 30, 2010 – present – host unknown.

7. Identify any website other than ones identified in response to the preceding interrogatory along, with the host of said websites, which you have authorized any photograph you have taken to be posted, since January 2015, and provide the dates during which you have given such authorization to be in effect.

**Response:** Alamy (2006 – August 7, 2020), Getty (October 4, 2017 – July 20, 2021), and AGE Fotostock (June 29, 2005 – present).

8. Identify any website, including the host of any such website, of which you have become aware, other than any website identified in response to preceding interrogatories number 9 and 10, on which have been posted or displayed any photographs you have taken, without your consent, at any time since October 2012.

**Response:** Harrington objects to this request as overbroad and not relevant to the claims or defenses asserted in this lawsuit. Harrington maintains a library of approximately 500,000 photographs created over a 40+ year career. Since October 2012, Harrington has become aware of thousands of infringements of his professional photographs, with many individual photographs being used without Harrington's permission on hundreds of different websites. For example, the photograph available at https://blaineharrington.photoshelter.com/gallery-image/2013-SATW-Competition-Images-gallery-version/G0000Ggb3crgcqNY/I0000VZqg4Hxje5k appears on approximately 150 websites not authorized by Harrington. As another example, the photograph available at https://blaineharrington.photoshelter.com/image/I0000W_c0GpEU.fE likewise appears on 150 – 200 websites not authorized by Harrington. To identify "any website" on which Harrington's photographs appear without his consent would require Harrington to identify

thousands (if not tens of thousands) of websites. Nor is the information sought herein relevant to any of the claims or defenses at issue.

9.  With respect to any website identified in response to previous interrogatory number 8, describe all efforts you have taken to prevent photographs you have taken from being posted or displayed on such website, including the date or dates you undertook such efforts.

**Response:** Harrington objects to this interrogatory for the same reasons stated as in response to Interrogatory No. 8. To the extent this interrogatory is inquiring about Harrington's general efforts to prevent his photographs from being posted on websites without Harrington's permission, Harrington states as follows: Harrington utilizes PhotoShelter's security features for any photograph posted to his website (https://www.blaineharrington.com/index) – these features prevent persons from 'right-clicking' photographs and downloading them. Harrington also displays copyright warnings on each page of his website and likewise embeds all of his images with metadata indicating Harrington's ownership thereof. Harrington also utilizes copyright management information/watermarks for photographs posted to his social media sites. In the event Harrington discovers an infringement of his work, he may (depending on the use and the location of the infringer) send a letter/e-mail (directly or through counsel) to the website owner asking that the image be removed and/or that payment be made for the past infringement. Harrington will occasionally file a lawsuit if necessary to enforce his intellectual property rights.

10.  Identify any websites, including the host of such website, of which you have become aware, which has posted or displayed any photograph you have taken without providing notice of your claim of copyright ownership in such photograph, at any time since January 2015.

**Response:** See response to Interrogatory No. 8.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

11. Identify any person with knowledge of the facts supporting any defenses or claims you have asserted or alleged in your pleadings in this matter, and with respect to each such person state in detail the facts about which they have knowledge.

**Response:**

| Individual and Location | Subject Matter |
|---|---|
| Blaine Harrington III<br>c/o Copycat Legal PLLC<br>3111 N. University Drive<br>Suite 301<br>Coral Springs, FL 33065 | Information concerning Harrington's creation of the subject photographs, Harrington's efforts to sell his professional photography, and discovery of each of the Plaintiffs' use of the subject photographs. |
| David Stafford<br>c/o Peacock Law P.C.<br>201 Third Street NW<br>Suite 1340<br>Albuquerque, NM 87102 | Information concerning Defendant's affirmative claims against Plaintiff, Defendant's publication of the subject photograph, Defendant's profits/revenue generated therefrom, and Defendant's prior payment of licensing fees for photographs. |
| Jennifer Dubois<br>c/o Peacock Law P.C.<br>201 Third Street NW<br>Suite 1340<br>Albuquerque, NM 87102 | Information concerning Defendant's affirmative claims against Plaintiff, Defendant's publication of the subject photograph, Defendant's profits/revenue generated therefrom, and Defendant's prior payment of licensing fees for photographs. |

12. Identify any person you will call as an expert witness to testify at the trial of this matter, and provide the information about such person and the anticipated testimony of such person required by Rule 26(a)(2)(B), F.R.C.P.

**Response:** Harrington has not yet determined what expert, if any, he may call as an expert witness to testify at the trial of this matter. Any such expert will be disclosed pursuant to the terms of the Scheduling Order entered by the Court.

13. Attached is a list of cases in which you were a party. With respect to each of those cases in which you asserted a claim for infringement of a copyright you claimed to own in a photograph you had taken, please provide the following information:

    a. The registration number of the copyrighted photograph.

    b. Any amount you received from the alleged infringer, whether by way of settlement or a collected judgment, in resolution of your claim of infringement.

    c. The costs you incurred, inclusive of attorneys fees, in connection with your assertion of infringement of your copyright.

**Response:** Harrington objects to this request as not relevant to the claims or defenses at issue in this lawsuit. See, e.g. Home Design Servs. v. B&B Custom Homes, LLC, Civil Action No. 06-cv-00249-WYD-G., 2008 U.S. Dist. LEXIS 55980, at *13 (D. Colo. May 30, 2008) ("The fact that the Plaintiff has been successful in protecting copyrighted designs and has generated revenue through litigation would not appear to pertain to the elements of the defense of copyright misuse. The fact that the Plaintiff has litigated claims under the federal Copyright Act and has been successful in that litigation fact does not indicate to this Court that the Plaintiff has engaged in copyright misuse. The Defendants must establish that the Plaintiff extended its purported monopoly beyond the scope of the copyright. I find that litigation revenue of the Plaintiff in other cases around the country does not tend to show that the Plaintiff illegally extended its monopoly beyond the scope of the copyright laws. I find that the information sought by Defendants with regard to Plaintiff's litigation revenue from around the country is unlikely to lead to the discovery of admissible evidence regarding the Defendants' affirmative defense of copyright misuse, based on an extension of a purported monopoly.").

Harrington likewise objects to this request (to the extent it seeks identification of the registration numbers of copyrights associated with cases publicly-available on PACER as seeking information equally available to Plaintiffs (as Harrington would likewise need to click through each of these different cases to identify the registration number specified therein).

Harrington likewise objects to this request as seeking disclosure of information protected by confidentiality clauses governing multiple settlement agreements (as Harrington would be in breach of confidentiality obligations by producing such absent a court order).

14. Identify by name and case number and the court, any case you filed in any court in which you asserted a claim for copyright infringement in a photograph you had taken since January 1, 2015 in which a court entered a final judgment in your favor. With respect to each case identified, please provide the following information:

    a. The terms of the judgment, including the amount of any damages awarded and the amounts of any costs or attorneys fees awarded.

    b. The basis for the judgment, i.e., whether based on a jury verdict or after a bench trial, or based on a default judgment or motion for summary judgment, and whether such motion was opposed or unopposed.

**Response:** (1) Harrington III v. Equity Asset & Property Management, Inc. d/b/a Equity Residence, LLC, Case No. 3:18-cv-00216 (S.D. Cali.); Harrington was awarded $75,000.00 in statutory damages and $23,661.72 in attorneys' fees and costs as well as a permanent injunction; default judgment (opposing party did not appear). (2) Harrington III v. African American Matchmaking, Case No. 3:16-cv-00084 (W.D. Virginia); Harrington was awarded $15,750.00 in statutory damages as well as a permanent injunction; default judgment (opposing party did not appear); (3) Harrington III v. Aerogelic Ballooning, LLC, Case No. 1:18-cv-02023 (D. Colorado);

Harrington was awarded $3,200.00 in statutory damages; summary judgment (opposed by counsel).

15.   State all facts known to you that support your affirmative defense of unclean hands, with respect to each of the plaintiffs.

**Response:** "The equitable doctrine of unclean hands 'means that equity will not in any manner aid a party whose conduct in relation to the litigation matter has been unlawful, unconscionable, or inequitable.'" Array Techs., Inc. v. Mitchell, No. 17-087 JCH/LF, 2020 U.S. Dist. LEXIS 72933, at *11 (D.N.M. Apr. 24, 2020) (quoting Houston Oilers, Inc. v. Neely, 361 F.2d 36, 42 (10th Cir. 1966)). Here, Defendant was sent a pre-suit infringement notice showing that it had committed a clear act of copyright infringement. Rather than attempt to resolve the copyright infringement, Defendant retained counsel to sue Plaintiff for fabricated claims that it does not have any personal knowledge concerning. Indeed, the claims asserted in the Counterclaim appear to be based on fanciful allegations of Defendant's counsel alone (as Defendant apparently did not have any knowledge of Harrington's existence). Defendant has brought frivolous claims in an effort to actively discourage Plaintiff from pursuing redress for Plaintiffs' acts of copyright infringement. Defendant comes to the Court with unclean hands as it is guilty of copyright infringement yet denies such guilt and seeks affirmative relief based on 'facts' for which Defendant has no knowledge.

16.   State all facts known to you that support your affirmative defense of failure to mitigate Damages, with respect to each of the plaintiffs.

**Response:** Plaintiff assumes "each of the plaintiffs" in this interrogatory is intended to refer to Defendant. Defendant was presented with the opportunity to resolve its infringement of Plaintiff's copyrights pre-suit. Defendant declined to engage is settlement discussions (refusing to even

respond to Plaintiff's settlement offer) and instead decided to pursue frivolous claims herein. To the extent Defendant claims that its damages consist of attorneys' fees incurred in litigating this matter, Defendant could have mitigated those damages by fairly addressing its own liability pre-suit and resolving this matter without the need for a federal lawsuit.

17. State all facts known to you that support your affirmative defense of litigation privilege, with respect to each of the plaintiffs.

**Response:** Plaintiff assumes "each of the plaintiffs" in this interrogatory is intended to refer to Defendant. The litigation privilege applies to bar Defendant's claims to the extent based on statements made in the pre-suit settlement letters sent by Plaintiff's counsel to Defendant. The Counterclaim alleges that Plaintiff attempted to 'extort' Defendant through a pre-suit settlement letter, yet that letter is protected by New Mexico's absolute litigation privilege. See, e.g. Helena Chem. Co. v. Uribe, 2012-NMSC-021, ¶ 15, 281 P.3d 237, 242 (N.M. Sup. Ct. 2012).

18. State all facts known to you that support your affirmative defense based on the Noerr-Pennington Doctrine, with respect to each of the plaintiffs.

**Response:** Plaintiff assumes "each of the plaintiffs" in this interrogatory is intended to refer to Defendant. In the Tenth Circuit, the Noerr-Pennington Doctrine is referred to as Petition Clause immunity outside of the antitrust context. See CSMN Invs., Ltd. Liab. Co. v. Cordillera Metro. Dist., 956 F.3d 1276, 1283 (10th Cir. 2020) ("In this circuit, this immunity extends beyond antitrust situations…. But we refer to it as Petition Clause immunity, reserving the name, Noerr-Pennington, for antitrust cases) (internal citation omitted). Here, Defendant's claims are based (at least in part) on Plaintiff's pre-suit settlement letter (which itself attached a draft complaint to be filed for copyright infringement) and previously-filed copyright infringement lawsuits. Plaintiff's

right to petition cannot be infringed through Defendant's manufactured claims based on his sending pre-suit letters and/or actually filing lawsuits for copyright infringement.

Dated: July 10, 2022.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza_____
    Daniel DeSouza, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2022, I served the foregoing document via e-mail to: Jeffrey Squires, Esq. (jsquires@peacocklaw.com;).

/s/ Daniel DeSouza___
Daniel DeSouza, Esq.

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 7/9/2022    *Blaine Harrington III*
                   ID wtsUVZJbh1qik1jy5996kG1k

                   Blaine Harrington

## eSignature Details

**Signer ID:**      wtsUVZJbh1qik1jy5996kG1k
Signed by:          Blaine Harrington III
Sent to email:      blaineharr@comcast.net
IP Address:         95.93.209.23
Signed at:          Jul 9 2022, 7:10 am PDT