IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Case No. 1:22-cv-00063-LF-JHR

BLAINE HARRINGTON III,

     Plaintiff,

v.

360 ABQ, LLC d/b/a 360 VENTURES REAL
ESTATE,

     Defendant.

---

**PLAINTIFF'S MEMORANDUM IN**
**OPPOSITION TO MOTION TO COMPEL DISCOVERY**

Plaintiff/counter-defendant Blaine Harrington III ("Plaintiff") hereby files this memorandum in opposition to defendant/counter-plaintiff 360 ABQ, LLC d/b/a 360 Ventures Real Estate's ("Defendant") Motion to Compel Discovery (the "Motion") [D.E. 27], and states as follows:

## INTRODUCTION

The Motion paints with a broad brush.  While the Motion seeks to compel Harrington to respond to Interrogatory Nos. 4, 8, 9, 10, and 13 and Document Request Nos. 1, 6, 10, 14, 15, 16, and 19, the Motion curiously fails to address/analyze *any* of those requests.  Rather, the Motion simply proclaims that the sum total of requests are relevant, proportional, narrowly-tailored, etc., glossing over or ignoring the requests themselves.  As discussed in, Plaintiff's objections are well-founded and the Motion is due to be denied.

## ARGUMENT

**I.       Interrogatory Nos. 4 and 13**

Interrogatory No. 4 requests Plaintiff to disclose the total percentage of his earned income derived from pursuing copyright infringers while Interrogatory No. 13 seeks disclosure of the settlement amounts received/costs incurred by Plaintiff in the copyright infringement lawsuits that Plaintiff has filed.  Neither interrogatory is proper or has any relevance to Defendant's copyright misuse counterclaim/affirmative defenses.

As set forth in the Complaint, Plaintiff is a professional travel photographer who maintains files of over 500,000 images from over seventy-five countries.  His work has been featured in numerous magazines/travel calendars, including Newsweek, New York Times Magazine, Time, Travel + Leisure, etc.   In January 2022, Plaintiff discovered that Defendant (a real estate brokerage) published one of Plaintiff's registered photographs (of the Albuquerque skyline at sunset) on its business Facebook page without Plaintiff's authorization/license.  When Plaintiff was unable to resolve the matter amicably pre-suit, he filed this lawsuit for copyright infringement.

As the Court knows, Defendant has filed a counterclaim and various affirmative defenses on the basis that Plaintiff is a "copyright troll."  Specifically, Defendant alleges: (1) Plaintiff "knowingly allowed his photographs to be available to the public on websites without providing notice that he claims to be the photographer or copyright owner;"[1] (2) Plaintiff engages in web searches to identify infringers;[2] (3) Plaintiff retains lawyers to "threaten to sue the persons unless they pay him an exorbitant amount that could fairly be characterized as extortionate;"[3] and (4) Plaintiff has developed a "scheme… in order to lure individuals into downloading images of photographs in which he claims to own copyright."[4]

---

[1]    See Counterclaim [D.E. 5], at ¶ 1.
[2]    Id.
[3]    Id.
[4]    Id. at ¶ 3.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Plaintiff's responses to Interrogatory Nos. 4 and 13 is that documents pertaining to Plaintiff's gross revenues from pursuing infringers and/or specific settlement amounts of copyright infringement lawsuits has no relevance to the claims or defenses at issue in this lawsuit. Indeed, whether 5%, 25%, or 100% of Plaintiff's income is derived from pursuing copyright infringers has no bearing on whether Plaintiff is "knowingly" allowing his photographs to be published without attribution or "luring" individuals into downloading his photographs – i.e., the crux of Defendant's 'copyright troll' claims/defenses. The same is true with respect to specific settlements. If Plaintiff settled with Defendant A for $5,000.00 and with Defendant B for $100,000.00, those facts have no bearing on Defendant's actual allegations, claims, or defenses. Indeed, if Plaintiff settled 500 cases over the prior 5 years – each for $1.00 or each for $1 million – that has ***nothing*** to do with the factual assertions actually raised in this lawsuit.

The Motion is noticeably quiet on why Plaintiff's history of settlements with infringers is somehow relevant to the claims/defenses at issue in this lawsuit. It is not. If anything, Defendant's counsel (Jeffrey Squires, Esq.) appears to have developed a niche practice of representing copyright infringers in New Mexico, asserting the same canned/contrived counterclaims irrespective of the plaintiff, and is now seeking to pry into each and every one of Plaintiff's settlements for his own benefit rather than any issue material to this lawsuit.

To undersigned counsel's knowledge, <u>Home Design Servs. v. B&B Custom Homes, LLC</u>, Civil Action No. 06-cv-00249-WYD-GJR, 2008 U.S. Dist. LEXIS 55980 (D. Colo. May 30, 2008) is the only case from ***within the 10th Circuit*** in which a similar dispute arose over a plaintiff's litigation-related activity/income. In <u>Home Design Servs.</u>, a home designer sued numerous defendants for alleged copyright infringement. The defendants in that case "requested a ruling regarding the discoverability of information related to revenue Plaintiff receives from litigation in

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

other copyright cases throughout the country, including amounts received from any verdicts, judgments, court decrees, and settlement agreements." Id. at * 6.  The defendants argued that such evidence was relevant to their affirmative defense of copyright misuse.  The court in Home Design Servs. analyzed the doctrine of copyright misuse *in the 10th Circuit* and found that evidence of settlements in other cases or percentage of revenue constituting settlements in infringement actions had *no relevance* to the misuse doctrine:

> The fact that the Plaintiff has been successful in protecting copyrighted designs and has generated revenue through litigation would not appear to pertain to the elements of the defense of copyright misuse. The fact that the Plaintiff has litigated claims under the federal Copyright Act and has been successful in that litigation fact does not indicate to this Court that the Plaintiff has engaged in copyright misuse. The Defendants must establish that the Plaintiff extended its purported monopoly beyond the scope of the copyright. I find that litigation revenue of the Plaintiff in other cases around the country does not tend to show that the Plaintiff illegally extended its monopoly beyond the scope of the copyright laws. I find that the information sought by Defendants with regard to Plaintiff's litigation revenue from around the country is unlikely to lead to the discovery of admissible evidence regarding the Defendants' affirmative defense of copyright misuse, based on an extension of a purported monopoly.

> Nor does the fact that the Plaintiff has recovered more in litigation revenue than the cost of the plans tend to show that the Plaintiff has violated the public policy underlying copyright law.

> HN5 Section 504(b) of the Copyright Act protects the copyright holder by allowing the copy right holder to recover not only the actual damages but also any of the infringer's profits. As the Plaintiff states in its brief, damages are awarded to compensate the copyright owner for losses from the infringement and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act. Section 504(b) is punitive in nature because it is designed to deter copyright infringement. Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act.

> Even if revenue from litigation exceeds the cost of the plans, there

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

> is nothing in this fact that would tend to show that the Plaintiff has acted in violation of the public policies underlying copyright law. I find that litigation revenue is not reasonably calculated to lead to the discovery of information tending to show that the Plaintiff has violated the public policies underlying copyright law. I consequently find that the information sought by the Defendants with regard to the Plaintiff's litigation revenue from cases brought around the country is unlikely to lead to the discovery of admissible evidence in support of the Defendants' copyright misuse defense based on violation of public policy.

Home Design Servs., 2008 U.S. Dist. LEXIS 55980, at *13-15.

Notably, the court in Home Design Servs. did allow the defendants to make limited inquiry into the plaintiff's general litigation revenue – but not because such was relevant to the copyright misuse doctrine. Rather, the court allowed such limited inquiry as potentially bearing on the credibility of various of the plaintiff's corporate officer witnesses who might have some pecuniary interest in the lawsuit. As a result, the court allowed discovery of how much those particular witnesses have individually made as a result of litigation revenue. *In this case*, Plaintiff is an individual and has identified only himself (in his initial disclosures) as a witness with respect to his claims. There are no corporate officers/employees who may be biased. Given the above, the Court should sustain Plaintiff's objections to Interrogatory Nos. 4 and 13.

## II.      Interrogatory Nos. 8, 9, and 10

Interrogatory No. 8 seeks identification of any website, including the host of such website, of which Plaintiff has become aware of any of his photographs being posted without Plaintiff's consent. Interrogatory No. 9 seeks a description of all efforts taken by Plaintiff to prevent photographs from being posted on each website identified in response to Interrogatory No. 8. Interrogatory No. 10 likewise seeks identification of websites on which Plaintiff's photographs have been posted without notice of Plaintiff's claim of copyright ownership.

Plaintiff objected to these interrogatories as overbroad and provided specific examples of

exactly how burdensome it would be to respond to such.  The response highlighted how, using only 2 of Plaintiff's photographs as examples, there were at least 300 websites publishing such photographs without Plaintiff's authorization.  To identify "any website" (in addition to the host thereof) on which Plaintiff's photographs appear without his consent would be a monumental task as there are likely *tens of thousands* of websites – from 2012 through the present – that have infringed on Plaintiff's copyrights.

Curiously, Defendant's pre-motion letter [D.E. 27-3] entirely ignores these Interrogatories. Undersigned counsel's response letter [D.E. 27-4] pointed this out, yet the Motion again seems to ignore the issue.  With respect to efforts to prevent infringement, Plaintiff provided a detailed response to Interrogatory No. 9 with respect to Plaintiff's general efforts, but Plaintiff cannot be expected to identify tens of thousands of websites, an equal number of website hosts, and a line-by-line list of efforts that Plaintiff takes to fight infringement on each specific site.  It would likely take months (if not years) for Plaintiff to even put such a list together, and Defendant has *not once* challenged this assertion or offered any suggestion to lessen the burden.  Defendant can certainly ask questions in a deposition about Plaintiff's efforts at protecting his photography, but Defendant cannot overburden Plaintiff by making him sift through 500,000 photographs and tens of thousands of infringing websites.

III.     Request Nos. 1, 6, 10, 14, 15, 16, 19

Request for Production Nos. 1 and 10 seek production of demand letters and/or takedown notices sent by Plaintiff to alleged infringers of his work.  The remainder of the Requests for Production at issue (6, 14, 15, 16, and 19) seek production of documents evidencing Plaintiff's litigation/settlement revenue from pursuit of copyright infringers.  With respect to Plaintiff's litigation/settlement revenue, the above discussion regarding the Interrogatories is equally

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

applicable here.  Whether sought in the form of an interrogatory or a request for production, information concerning Plaintiff's revenue from pursuit of infringers has no bearing on the actual allegations in this lawsuit or to the copyright misuse doctrine as applied in the 10th Circuit.

Request Nos. 1 and 10 are likewise not relevant to the claims/defenses at issue in this lawsuit.  The fact that Plaintiff has sent demand letters to other parties who infringed his copyrights has no relevance to whether Plaintiff extended the monopoly provided by the Copyright Act or somehow committed a personal tort against Defendant.  Again, Defendant's actual allegation is that Plaintiff "knowingly" allows his photographs to be published on sites without attribution to him and "lures" individuals into downloading his photographs from those sites.  Plaintiff's demand letters/takedown notices have no relevance to Defendant's allegations.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion; (b) awarding Plaintiff its reasonable fees and expenses incurred in opposing the Motion pursuant to Fed. R. Civ. P. 37(a)(5)(B); and (c) for such further relief as the Court deems proper.

Dated: August 9, 2022.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza, Esq.
       Daniel DeSouza, Esq.

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2022, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

<u>/s/ Daniel DeSouza</u>

Daniel DeSouza, Esq.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228