IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BLAINE HARRINGTON, III,

    Plaintiff/Counterclaim Defendant,

v.                                                                      Case No. 1:22-cv-00063-KWR-JHR

360 ABQ, LLC, *doing business as*
360 VENTURES REAL ESTATE,

    Defendant/Counterclaimant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant/Counterclaimant 360 ABQ, LLC's ("360 ABQ") Motion to Compel Discovery [Doc. 27], filed July 27, 2022. Plaintiff Blaine Harrington, III ("Plaintiff") filed a response in opposition on August 9, 2022 [Doc. 32], to which 360 ABQ replied on August 16, 2022 [Doc. 33]. Having considered the parties' briefing and the relevant law, the Court **grants** the Motion [Doc. 27] in part.

**I.    BACKGROUND**

Plaintiff is a professional travel/location photographer based in Denver, Colorado. [Doc. 1 at 2]. In this copyright infringement action, Plaintiff asserts that he created a photograph of the downtown Albuquerque skyline in 2012, and obtained a copyright for the photograph in 2013. [*Id.* at 3]. Plaintiff alleges that 360 ABQ, a real estate brokerage firm in Albuquerque, New Mexico, displayed the copyrighted photograph on its business Facebook page without a license to do so and without otherwise seeking Plaintiff's permission to use the photograph. [*Id.* at 4]. Plaintiff filed this lawsuit on January 28, 2022, alleging one count of copyright infringement against 360 ABQ for reproducing, distributing, and publicly displaying the photograph without Plaintiff's authorization. [*Id.* at 5–6].

1

In its answer, 360 ABQ raises several affirmative defenses including in particular, the affirmative defense of copyright misuse. [*See* Doc. 5 at 4]. In addition, 360 ABQ has asserted the following counterclaims against Plaintiff: declaratory judgment for copyright misuse (Count I); violations of the New Mexico Unfair Practices Act, NMSA 1978, § 57-12-1 (Count II); and prima facie tort (Count III). [*See id.* at 8–10]. 360 ABQ alleges that Plaintiff is a "copyright troll" who allows his photographs to be available on public websites without providing copyright notice and then threatens to sue people who, without notice of the copyright, download and use his images. [Doc. 5 at 4–5]. 360 ABQ claims that Plaintiff makes "extortionate" settlement demands and files lawsuits for copyright infringement if an alleged infringer refuses to pay him for the infringement. [*Id.* at 5]. 360 ABQ further claims Plaintiff has threatened hundreds of individuals and/or entities with copyright infringement lawsuits, "most of whom have paid amounts far beyond the fair value of the use of those photographs simply to avoid the even greater likely costs of litigation." [*Id.*].

According to 360 ABQ, Plaintiff is engaged in a broad scheme of copyright misuse, which 360 ABQ describes as follows: Plaintiff has for years allowed his photographs to be available on websites without a copyright or ownership notice; Plaintiff intends for his photographs to be available on certain websites without copyright notice to induce innocent users to download and use his photographs; Plaintiff hires a service to track those who download and use his photographs; Plaintiff directs his lawyers to threaten or pursue a claim for copyright infringement against those who use his photographs unless they pay an "extortionate" amount to compensate Plaintiff for the alleged infringement; and Plaintiff acts knowingly and willfully to implement this scheme to misuse copyright law and extort money from targets of his scheme. [*See id.* at 5–8]. 360 ABQ claims to be a target of this scheme. [*Id.*]

### A. Procedural History

On February 17, 2022, Plaintiff moved to dismiss 360 ABQ's counterclaims and strike 360 ABQ's affirmative defense of copyright misuse. [*See* Doc. 7]. On May 18, 2022, the Court denied Plaintiff's motion to dismiss, finding 360 ABQ's allegations that Plaintiff "is not using the copyright and legal system for an authorized purpose, . . . but as a method to derive income from infringement demands or suits" were sufficient to state a plausible claim that Plaintiff "has a wrongful motive and misused the copyright or legal system." [*See* Doc. 15 at 6–7].

On July 27, 2022, 360 ABQ filed the Motion to Compel [Doc. 27] that is presently before the Court. In the Motion, 360 ABQ asks the Court to order Plaintiff to provide answers to five interrogatories (Nos. 4, 8, 9, 10, 13), and to produce documents in response to seven requests for production ("RFP") (Nos. 1, 6, 10, 14, 15, 16, 19). [*See* Doc. 27]. 360 ABQ served these discovery requests on June 15, 2022, and Plaintiff lodged written objections on July 10, 2022. [*See* Docs. 27-1, 27-2].

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "[T]he scope of discovery under the federal rules is broad and [] 'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify issues.'" *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Nonetheless, the Court

is not required to permit the parties to engage in fishing expeditions in the hope of supporting their claims or defenses. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018).

Federal Rule of Civil Procedure 33 governs interrogatories to parties. "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). A responding party may object to an interrogatory but the grounds for an objection "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Furthermore, responses by general reference to another document are insufficient. *See* Fed. R. Civ. P. 33(d)(1) (If responding by producing business records, the responding party is required to "specify[ ] the records . . . in sufficient detail to enable the interrogating party to locate and identify them . . ."); *see, e.g.*, *Heuskin v. D&E Transp., L.L.C.*, No. Civ. 19-957 MV/GBW, 2020 WL 1450575, at *3 (D.N.M. Mar. 25, 2020); *Bayview Loan Servicing, L.L.C. v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009).

Federal Rule of Civil Procedure 34 governs requests for production. Requests for production "must describe with reasonable particularity each item or category of items to be inspected[.]" Fed. R. Civ. P. 34(b)(1)(A). A proper response "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). A party responding to a request to produce documents has the responsibility to provide meaningful responses to the request and a general reference to another document is insufficient. *See* Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must . . . organize and label [documents] to correspond to the categories in the request[.]"); *see, e.g.*, *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d. 476, 509–10 (N.D. Tex. 2016) (A party responding to a request is responsible "to review the voluminous documents to identify those that are responsive to specific requests."); *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D.

4

535, 541 (D. Kan. 2006) (A party responding to a request must identify which documents are responsive to which requests.).

Where the Court grants a motion to compel under Rule 37(a), it must "after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless: (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (2) "the opposing party's nondisclosure, response, or objection was substantially justified"; or "other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(A).

## III.  ANALYSIS

### A.  Interrogatories No. 4 and No. 13

The Court first addresses Plaintiff's objections to 360 ABQ's interrogatories that sought information regarding Plaintiff's copyright infringement related litigation activity. For Interrogatory No. 13, 360 ABQ provided Plaintiff a list of cases in which he was a party, and asked him to identify those cases which involved copyright infringement claims. For each case that involved a copyright infringement claim, Interrogatory No. 13 asked Plaintiff to identify: (a) the registration number of the copyrighted photograph; (b) any amount Plaintiff received from the alleged infringer, whether by way of settlement or a collected judgment; and (c) the costs Plaintiff incurred, inclusive of attorney fees, in connection with his assertion of copyright infringement. [Doc. 27-1 at 8]. Interrogatory No. 4 concerned any revenue Plaintiff may have generated from pursuing copyright infringement claims, asking Plaintiff to identify the percentage of his total earned income, for years 2015 through 2021, that consisted of payments he received "from persons [he] accused of infringing copyrights in photographs in which [he] own[ed] or claimed to own the

copyright, to resolve and/or obtain a release from [him] with respect to [his] accusation or claim of infringement." [*Id.* at 2–3].

Relying primarily on *Home Design Servs. v. B&B Custom Homes, LLC*, No. 06-cv-0249, 2008 WL 2302662 (D. Colo. May 30, 2008), Plaintiff argues Interrogatories No. 4 and 13 seek information that is not relevant to the claims or defenses at issue in this case. [*See* Doc. 27-1 at 3, 8–9]. In *Home Design Servs.*, the district court determined that the mere fact the plaintiff had successfully litigated copyright claims and generated litigation revenue did not mean the plaintiff had engaged in copyright misuse; rather, for purposes of a copyright misuse claim or defense, the court held that the defendants were required to allege that the plaintiff "extended its purported monopoly beyond the scope of the copyright." 2008 WL 2302662, at *3–4. Because such allegations were not present in the case, the court in *Home Design Servs.* did not permit discoverability of the plaintiff's litigation revenue.[1] *Id.* This case is distinguishable from *Home Design Servs.* as that case did not involve the kinds of copyright misuse allegations 360 ABQ makes in this case. As the Court explained in its May 18, 2022 Memorandum Opinion and Order,

> Here, 360 ABQ alleges more than the mere fact that Mr. Harrington files or threatens to file cases to enforce his copyrights. It also alleges that Mr. Harrington intentionally allows his images to be posted online without copyright notice and uses a service to track who uses or downloads the image so that he can sue or "extort" money from these "unwitting" users. In addition, it alleges that Mr. Harrington uses abusive litigation tactics and threats, including demanding settlements well in excess of the damages . . . In other words, 360 ABQ alleges that Mr. Harrington is not using the copyright and legal system for an authorized purpose, 17 U.S.C. § 106, but as a method to derive income from infringement

---

[1] In *Home Design Servs.*, the district court did, however, permit "limited inquiry into Plaintiff's litigation revenue" from the plaintiff's potential witnesses to the extent such discovery would show the witnesses' pecuniary interest in the outcome of the litigation. *See* 2008 WL 2302662, at *4 ("The Defendants shall be allowed to inquire of Plaintiff's potential witnesses, including Plaintiff's CEO, experts, and fact witnesses, with regard to their pecuniary interest in litigation revenues. The Defendants may seek to discover exactly how much is at stake for the witnesses by reviewing how much money the witnesses have made as a consequence of litigation revenue in the past. The litigation revenue is discoverable as being reasonably calculated to lead to impeachment evidence. The Defendants are not, however, entitled to the discovery of particular verdicts, judgments, court decrees and settlement agreements. Nor shall the Defendants be permitted to obtain the documents, including settlement agreements, which would identify Plaintiff's gross litigation related revenue from 1996 forward.").

> demands or suits. These allegations, taken as true, state a plausible claim that Mr. Harrington has a wrongful motive and misused the copyright or legal system.

2022 WL 1567094, at *3. As 360 ABQ points out, other infringement suits involving copyright misuse claims and/or defenses have authorized discovery of the copyright holder's litigation-related activities and income stream where there are allegations that the copyright holder "is more focused on the business of litigation than selling a product or licensing [his] copyrights to third parties" or where the copyright holder "employs abusive litigation tactics to extract settlements." *See, e.g., Oppenheimer v. Scarafile*, No. 2:19-cv-3590, 2022 WL 2704875, at *4 (D.S.C. July 12, 2022); *see also id.*, 2021 WL 5902740, at *3 (D.S.C. Aug. 26, 2021) (order compelling plaintiff to "produce a list (including case name, number and jurisdiction) of lawsuits he has initiated to claim copyright infringement of any of his photographs" and to "note whether each litigation resulted in a settlement and, if so, the settlement value and terms or that they are confidential under those parties' protective order."). Given the nature of the allegations 360 ABQ has raised, the Court finds that the discovery sought in Interrogatory No. 4 and No. 13 is relevant and reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's relevancy-based objections to these two interrogatories are therefore overruled.

Plaintiff raises additional objections with respect to Interrogatory No. 13. Plaintiff argues that Interrogatory No. 13 seeks litigation-related information that is publicly available and equally accessible to 360 ABQ. [Doc. 27-1 at 9]. Though 360 ABQ may have access to certain litigation information, Plaintiff has not shown that all of the information 360 ABQ seeks for Interrogatory No. 13 is publicly available. This objection is overruled.

Plaintiff also objects to disclosing certain settlement-related information, arguing that it is protected by confidentiality orders. [*Id.* at 9]. "[G]enerally speaking, information that is merely confidential (as opposed to privileged) is discoverable so long as it is relevant and proportional to

7

the needs of the case." *Sugar v. Tackett*, No. 1:20-cv-00331, 2021 WL 5769463, at *3 (D.N.M. Dec. 6, 2021) (citing Fed. R. Civ. P. 26(b)(1)). "The rules do not except confidential agreements from discovery; rather they provide that confidential information should be subject to a protective order." *Id.* In the context of settlement agreements in particular, the Tenth Circuit held in *Burke v. Delgado* that a "settlement's confidentiality does not bar discovery." 935 F.3d 960, 1048 (10th Cir. 2019) (citation omitted). The Tenth Circuit, however, has encouraged district courts to "take appropriate measures such as a protective order to safeguard any legitimate privacy interests in the settlement." *Id.* (citing *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 369 (N.D. Ill. 2001) (compelling disclosure of confidential settlement agreement subject to a protective order and with instruction the parties not discuss or further disclose the agreement absent an order from the court)). A protective order is already in place in this case. [Doc. 35]. The Court therefore overrules Plaintiff's objection to disclosure of settlement information, as this information is relevant to 360 ABQ's copyright misuse claim. The Court will, however, limit Interrogatory No. 13 as follows:

    Plaintiff shall produce a list of copyright infringement lawsuits he has initiated (including case name, case number, copyright registration number, and jurisdiction). For each lawsuit, Plaintiff shall note the ultimate disposition of the case, including the amount of any collected judgments and costs incurred. In cases which resulted in a settlement, Plaintiff shall state the settlement value; for confidential settlements, Plaintiff shall disclose the settlement value in accordance with the terms of the protective order [Doc. 35]. The Court further restricts Interrogatory No. 13 to a time period of October 2012, when Plaintiff took the copyrighted photograph at issue in this case, to January 28, 2022, when Plaintiff commenced this lawsuit.

    Based on the foregoing, the motion to compel is granted in part with respect to Interrogatory No. 13 and in full with respect to Interrogatory No. 4.

B. **Interrogatories No. 8, No. 9, and No. 10**

Through Interrogatories No. 8, No. 9, and No. 10, 360 ABQ seeks information regarding websites that have posted Plaintiff's copyrighted works without his consent. Interrogatory No. 8 asks Plaintiff to identify any website, including the host of any such website, that Plaintiff became aware of which posted his copyrighted photographs without his consent since October 2012. [Doc. 27-1 at 5]. For each website identified in Interrogatory No. 8, Interrogatory No. 9 asks Plaintiff to describe efforts he undertook to prevent his photographs from being posted on each website. [*Id.* at 6]. Likewise, Interrogatory No. 10 asks Plaintiff to identify any websites on which Plaintiff's photographs have been posted without notice of his claim of copyright ownership. [*Id.*]

Plaintiff objects to these interrogatories as overbroad and burdensome. [*See* Doc. 32 at 5–6]. Plaintiff represents that he has a library of over 500,000 photographs he has taken throughout his career, and he has become aware of "thousands" of infringements of his professional photographs since October 2012. [Doc. 27-1 at 5]. He argues that responding to these interrogatories would require him to identify "thousands (if not tens of thousands) of websites." [*Id.* at 5–6]. Additionally, Plaintiff argues that the interrogatories seek information that is not relevant to 360 ABQ's claims or defenses. [*Id.*]

The relevancy of the information sought in Interrogatories No. 8 and No. 10 is not readily apparent on its face. A list of websites where Plaintiff's copyrighted works have been posted without his consent (Interrogatory No. 8) or notice of copyright ownership (Interrogatory No. 10) would not show that Plaintiff has engaged in copyright misuse, i.e., that he has "illegally extended [his] monopoly beyond the scope of copyright or violated the public policies underlying the copyright laws." *Harrington*, 2022 WL 1567094, at *3. It is only at the point when Plaintiff took efforts to prevent his copyrighted works from appearing on such websites that the information

9

becomes relevant to 360 ABQ's counterclaims and defenses. Moreover, in other interrogatories (Interrogatories No. 6 and No. 7), Plaintiff already responded to 360 ABQ's queries asking him to identify any websites on which he has authorized the posting of his copyrighted photographs. [*See* Doc. 27-1 at 4–5]. Therefore, it seems redundant and unnecessary for 360 ABQ to then ask Plaintiff in Interrogatories No. 8 and No. 10 to provide a list of any websites where Plaintiff has not done so; if anything, these interrogatories amount to a fishing expedition by 360 ABQ in the hopes of finding additional admissible evidence to support its counterclaims and defenses. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018) (indicating that the Court is not required to permit a party to engage in fishing expeditions in the hope of supporting its claims or defenses). The Court therefore denies the motion to compel with respect to Interrogatories No. 8 and No. 10.

   As for Interrogatory No. 9, Plaintiff has provided an answer regarding the general efforts he undertakes to prevent his copyrighted works from being posted on websites without his authorization. [*See* Doc. 27-1 at 6]. The Court agrees with Plaintiff that it would be unduly burdensome for him to further identify efforts he made with respect to every single website that has posted his copyrighted works without prior consent or without notice of copyright ownership, particularly here where there is a large volume of copyrighted works. While 360 ABQ needs discovery to determine the viability of its copyright misuse claim and its defenses, the Court cannot permit requests for extensive and burdensome production. The Court further notes that 360 ABQ will learn of Plaintiff's specific efforts through other discovery requests the Court has permitted, including in particular, the discovery requests regarding Plaintiff's litigation activities and settlement demands. Thus, the Court will deny the motion to compel as to Interrogatory No. 9.

**C. RFP Nos. 1, 6, 10, 14, 15, 16, 19**

For the same reasons discussed earlier regarding the interrogatories that sought information regarding Plaintiff's litigation activities and revenue from copyright infringement claims, the Court will grant 360 ABQ's requests for production that seek litigation and settlement-related information. Specifically, Plaintiff shall respond to RFP No. 1, which asks him to produce demand letters, and RFP No. 10, which asks him to produce takedown notices:

> Letters written by you or anyone acting on your behalf since January 1, 2015 in which a claim was asserted that the addressee had infringed the copyright you claim to own in a photograph you had taken.

[Doc. 27-2 at 1].

> Documents you have sent to any person, including by not limited to DMCA takedown Notices that are the subject of 17 U.S.C. § 512, by which you sought removal of any photographs you have created from any website on which a photograph in which you claim to own copyright has been posted.

[Doc. 27-2 at 5].

Likewise, Plaintiff shall respond to RFP No. 6, No. 14, and No. 15, which ask him to produce the following settlement-related information, with the caveat that such information must be disclosed in accordance with the terms of the protective order [Doc. 35]:

> Documents evidencing the terms on which you have agreed to settle any claim for infringement of copyright you asserted with respect to any photograph, whether or not such claim was asserted by lawsuit or by written demand to an alleged infringer, since January 1, 2015.

[Doc. 27-2 at 3].

> Documents evidencing all amounts you have agreed to accept in settlement of any of the cases in which you filed complaints[.]

[Doc. 27-2 at 6].

> Documents evidencing all amounts you have agreed to accept in settlement of any matters in which you asserted your copyright in a photograph you had taken had been infringed, which matters were settled without you filing a complaint in court.

11

[Doc. 27-2 at 7]. Although RFP No. 6 and No. 14 are temporally limited, no such limitation exists with respect to RFP No. 15. The Court therefore limits RFP No. 15 to the same time period (since January 1, 2015).

Finally, the Court addresses RFP No. 16 and No. 19, both of which seek information regarding Plaintiff's income. RFP No. 16 asked Plaintiff to produce documents evidencing his earnings as a professional photographer, but "excluding any income resulting from judgments or settlement of claims of infringement" he has asserted since January 1, 2015. [Doc. 27-2 at 8]. Because the Court has ordered Plaintiff to respond to Interrogatory No. 4, which seeks information regarding the percentage of Plaintiff's total earned income since 2015 that consisted of income resulting from judgment or settlement of claims of infringement, the Court will deny the motion to compel with respect to RFP No. 16. The Court will likewise deny the motion to compel with respect to RFP No. 19, which asked Plaintiff to produce:

> Documents containing records you have kept since January 1, 2015 showing income you have received as the result of settlements or judgments you obtained as a result of your demands for payment for infringements of photographs you had taken in which you claimed to own copyrights.

[Doc. 27-2 at 9]. The information responsive to this RFP will already be produced in response to 360 ABQ's other requests for production.

### D. Attorney Fees and Expenses

As a final matter, the Court addresses 360 ABQ's request for attorney fees and expenses it incurred in bringing its motion to compel. As stated earlier, an award of expenses to the prevailing party is required under Rule 37(a)(5)(A) unless the other party's position is substantially justified, or other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii–iii). The Court has concluded that 360 ABQ's motion to compel is meritorious in part only. Upon

review of the authority cited by Plaintiff from other jurisdictions, the Court also finds that Plaintiff was substantially justified in raising objections to certain of 360 ABQ's discovery requests. Under these circumstances, the Court finds it appropriate to deny 360 ABQ's request for attorney fees and expenses incurred in litigating the motion to compel.

## IV. CONCLUSION

In sum, the Court **grants in part and denies in part** 360 ABQ's Motion to Compel [Doc. 27] as more fully set forth herein.

**IT IS SO ORDERED**.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE