IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Case No. 1:22-cv-00063-KG-LF

MAUREEN HARRINGTON, as personal
representative for the estate of BLAINE
HARRINGTON III,

     Plaintiff,

v.

360 ABQ, LLC d/b/a 360 VENTURES REAL
ESTATE,

     Defendant.

---

## PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiff/counter-defendant Maureen Harrington ("<u>Plaintiff</u>"), as personal representative for the estate of Blaine Harrington III ("<u>Blaine</u>") hereby moves for entry of final summary judgment against defendant/counter-plaintiff 360 ABQ, LLC d/b/a 360 Ventures Real Estate ("<u>Defendant</u>"), and states as follows:

## INTRODUCTION

Blaine is the creator and registered copyright owner of the photograph at issue in this lawsuit. Defendant is a business entity who, without Blaine's permission, published/displayed that photograph on its website in an effort to market Defendant's services. These facts alone establish that Defendant committed copyright infringement, leaving only the issue of the amount of damages to be awarded to Blaine. Defendant, however, decided to transform a straightforward case into a fantasy tale whereby it accused Blaine of 'luring' innocent victims into downloading his works by spreading them across the internet and masking his ownership thereof. The problem with these allegations, of course, is that they were all manufactured by Defendant and its counsel in an effort

to avoid liability for Defendant's own actions. Defendant plainly and unequivocally acknowledges that it has ***no evidence*** in support of its allegations, opting instead to rely on the secretive advice of its counsel and whimsy alone. As discovery is now closed and the hollowness of Defendant's allegations is revealed, however, Defendant can no longer rely on its allegations alone. Defendant must proffer actual evidence in support of its claims, and it has wholeheartedly failed to do so. Summary judgment must be granted in favor of Plaintiff and against Defendant on all claims.

## STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff has been appointed as the personal representative of the estate of her late husband, Blaine.[1]  The Estate owns and manages the copyrights to Blaine's photographic works, including those at issue in this lawsuit.[2]

2.      Blaine was a well-known and highly regarded travel/location photographer based in Denver, CO, a five-time SATW Travel Photographer of the Year (in addition to numerous other awards received during his career), and worked on assignment for most major news, business and travel magazines.[3]

3.      With over 45 years in business,[4] Blaine captured hundreds of thousands of images[5] from around the world.

4.      Blaine passed away in January 2023 while filming/taking photographs in South

---

[1]      See Declaration of Maureen Harrington, dated November 15, 2023 (the "Maureen Decl."), a true and correct copy of which is attached hereto as Exhibit "A," at ¶ 4.

[2]      Id. at ¶ 5.

[3]      See Declaration of Blaine Harrington III, dated December 31, 2022 (the "Blaine Decl.") (submitted in Blaine Harrington III v. Frank J. Mari, Case No. 0:22-cv-61156), a true and correct copy of which is attached hereto as Exhibit "B," at ¶ 3.

[4]      See Deposition Transcript of Blaine Harrington III (the "Blaine Tr."), a true and correct copy of which is attached hereto as Exhibit "C," at 16:23 – 17:7.

[5]      Id. at 41:13 – 41:18.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Africa.[6]

5.      In 2012, Blaine created a professional photograph of the skyline of downtown Albuquerque titled "20121008_nm-tex_2052" (the "Work").[7]

6.      The Work was registered by Blaine with the Register of Copyrights on March 05, 2013 and was assigned Registration No. VAu 1-132-209.[8]

7.      Defendant is a real estate company that primarily focuses on residential real estate.[9]

8.      Defendant is a single member limited liability company owned by David Stafford, an individual who has been a licensed realtor for approximately 20 years.[10]

9.      Mr. Stafford is a member of the National Association of Realtors.[11]

10.     Defendant advertises/markets its business through its website (https://360abq.com/) and Facebook page (https://www.facebook.com/360VenturesRealEstateABQ/).[12]

11.     On March 24, 2015 (after Blaine's above-referenced copyright registration of the Work), Defendant uploaded the Work to its business Facebook page and displayed it thereon (at https://www.facebook.com/360VenturesRealEstateABQ/photos/366090846921743).[13]

12.     From the date of its upload in March 2015 through at least Spring 2022, the Work

---

[6]      See Maureen Decl., at ¶ 3.

[7]      See Complaint, ¶ 9; see also Answer, ¶ 9.

[8]      See Complaint, at Exhibit A thereto.

[9]      See Deposition Transcript of David Stafford, dated September 19, 2023 (the "Stafford Tr."), a true and correct copy of which is attached hereto as Exhibit "D," at 4:22 – 5:6.

[10]     Id. at 5:7 – 5:10.

[11]     Id. at 7:24 – 8:1.

[12]     See Defendant's Answer [D.E. 5], at ¶ 13.

[13]     See Stafford Tr., at 20:24 – 21:6.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

was displayed on Defendant's business Facebook page.[14]

13.     Defendant never received a written or oral license to use the Work.[15]

## ARGUMENT

### I.  Legal Standard

Motions for summary judgment are proper and should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact and that the moving party is therefore entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Quaker State Minit-Lube v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). A motion for summary judgment forces a court to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action." Celotex Corp., 477 U.S. at 327.

The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, "the burden on the moving party may be discharged by 'showing' — that is, point out to the district court — that there is an absence of evidence to support the nonmoving party's case." Lincoln v. State Farm Fire & Cas. Ins. Co., No. CV 18-652 MV/LF, 2020 U.S. Dist. LEXIS 179951, at *10 (D.N.M. Sep. 30, 2020) (quoting

---

[14]     Id. at 21:7 – 21:10.

[15]     See Defendant's Answers to Plaintiff Blaine Harrington III's Request for Admissions (the "RFA Responses"), a true and correct copy of which is attached hereto as Exhibit "E," at No. 11; see also Stafford Tr., at 22:10 – 22:20.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Celotex Corp., 477 U.S. at 325)); see also Sports Unltd., Inc., v. Lankford Enter., Inc., 275 F.3d 996, 999 (10th Cir. 2002) (Although "[t]he burden of showing that no genuine issue of material fact exists is borne by the moving party," when "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by pointing to a lack of evidence for the nonmovant on an essential element of the nonmovant's claim").

## II.     Plaintiff is Entitled to Final Summary Judgment on Her Claim for Copyright Infringement

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement requires that the plaintiff prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Craft Smith, Ltd. Liab. Co. v. EC Design, Ltd. Liab. Co., 969 F.3d 1092, 1099 (10th Cir. 2020).

### A.     Blaine Owns a Valid Copyright

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Here, the Work was created in 2012 and registered in 2013 (within 5 years from first publication). The registration certificate therefore constitutes "prima facie" evidence of validity.

"Some minimal degree of creativity," or "the existence of ... intellectual production, of thought, and conception" is required for copyright protection. JCW Investments, Inc. v. Novelty, Inc., 482 F.3d 910, 914–15 (7th Cir. 2007) (quoting Feist Publications, Inc, 499 U.S. at 362). "[T]he requisite level of creativity is *extremely low*; even a slight amount will suffice. The vast

5

majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Feist Publ'ns, Inc., 499 U.S. at 345 (emphasis added). With respect to the creativity/originality of photographs, one court recently explained:

> Courts have found that photographs, even if taken partly for informative purposes, can still be creative. See, e.g., Balsley v. LFP, Inc., 691 F.3d 747, 760 (6th Cir. 2012) (finding that amateur photograph of a wet t-shirt contest had "a mixed nature of fact and creativity"); Kelly v. Arriba Soft Corp., 336 F.3d 811, 820 (9th Cir. 2003) ("Photographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature."). Even photographs of "mundane articles of furniture" have been found to have a creative nature for copyright purposes. See Ashley Furniture Indus., Inc. v. Am. Signature, Inc., No. 2:11-CV-427, 2014 WL 11320708, at *9 (S.D. Ohio 2014) ("although the copyrighted photographs at issue in this case depict comparatively mundane articles of furniture, they are at least as creative as the surreptitious grab shot at issue in Balsley.").

Maui Jim v. Smartbuy Guru Enters., 459 F. Supp. 3d 1058, 1102 (N.D. Ill. 2020). In that case, the court concluded that the photographs at issue (of Maui Jim sunglasses) were sufficiently creative to meet the minimum threshold: "although the 93 Photographs are mundane depictions of Maui Jim's sunglasses, we find that the process of creating those photographs necessarily included decisions about lighting, camera angle and distance, shadowing, and post-production editing. Additionally, creative judgment was necessarily exercised in selecting which photographs to use on Maui Jim's advertisements." Id. Defendant cannot seriously dispute that the photograph at issue meets the minimum levels of creativity required for copyright registration.

## B.     Copying of Constituent Elements

"The copying prong has two components. First, there must be copying as a factual matter—that is, the defendant must actually appropriate the plaintiff's work. Second, there must be substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected by the Copyright Act." Dutcher v. Bold Films LP, 822 F. App'x

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

858, 861 (10th Cir. 2020). Here, Defendant displayed a duplicate copy of the Work on its business Facebook page. The screenshots of Defendant's business Facebook page unequivocally show Defendant's copying of the Work.

### C.   Defendant's Infringement was Willful

"In the context of a copyright infringement, willfully is defined as 'with knowledge that defendant's conduct  constitutes copyright infringement.'"    Rocking Chair Enters., LLC v. Macerich SCG Ltd. P'ship, 407 F.Supp.2d 1263, 1267 (W.D. Okla. 2005) (quoting 4 Nimmer, Nimmer on Copyright § 14.04(B)(3)).  "To establish willfulness, [one] must show that [the alleged infringer] knew that its conduct constituted infringement or that it acted in reckless disregard of [ones's] rights."  In re Indep. Serv. Orgs. Antitrust Litig., 85 F.Supp.2d 1130, 1176 (D. Kan. 2000); see also DP Creations, Ltd. Liab. Co. v. Li, No. 2:22-cv-00337-TC, 2022 U.S. Dist. LEXIS 225582, at *5-6 (D. Utah Dec. 13, 2022) ("An act of copyright infringement is 'willful' when the infringer knows its conduct is infringing or if the infringer has acted in reckless disregard of the copyright owner's rights.").

Here, there is no question that Defendant's conduct was, at minimum, reckless.  As noted above, Defendant is a real estate company owned by a realtor with 20+ years of experience. Defendant pays professional photographers with respect to its MLS listings,[16] but did not bother to pay for photographs on its business Facebook page.  Mr. Stafford is a member of the National Association of Realtors, which itself publishes a multitude of content to its realtor members with respect to avoiding copyright infringement by using unlicensed photographs:[17]

---

[16]      See Stafford Tr., at 10:14 – 10:18.

[17]      See,        e.g.        https://www.nar.realtor/copyright#:~:text=copyright%20infringement%20claims.-,Copyright%20Infringement,in%20liability%20for%20copyright%20infringement; https://www.nar.realtor/magazine/real-estate-news/law-and-ethics/protect-your-website-from-copyright-claims; https://www.nar.realtor/videos/window-to-the-law/copyright-issues-for-real-estate-professionals;

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

- https://www.nar.realtor/copyright#:~:text=copyright%20infring ement%20claims.- ,Copyright%20Infringement,in%20liability%20for%20copyrig ht%20infringement
- https://www.nar.realtor/magazine/real-estate-news/law-and- ethics/protect-your-website-from-copyright-claims
- https://www.nar.realtor/videos/window-to-the-law/copyright- issues-for-real-estate-professionals;
- https://www.nar.realtor/window-to-the-law/copyright-and- music;
- https://www.nar.realtor/videos/risk-management-webinar- series/copyright-best-practices-to-avoid-costly-claims
- https://www.nar.realtor/magazine/real-estate-news/law-and- ethics/3-rules-to-avoid-a-copyright-claim-on-the-photos-you- use#:~:text=%E2%80%9CIf%20you%20cannot%20determine %20who,could%20be%20used%20with%20photographers

There is an abundance of educational materials specifically directed at realtors, all of which educates/instructs them to not use unlicensed photographs. Defendant does not even know what website its former employee found the Work, whether it identified Blaine as the author thereof, or what searches she performed to find the photograph.[18] Nor did Defendant even bother to find out.[19] Defendant likewise never maintained any policies with respect to the use/sourcing of photographs for its website/social media.[20] These facts alone are sufficient to establish recklessness. See, e.g. Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1186 (9th Cir. 2016) ("Given an approval process that never explicitly asks about copyrights at all, a jury could reasonably conclude that Live Nation's reliance on the artists who were the subjects of the

---

https://www.nar.realtor/window-to-the-law/copyright-and-music; https://www.nar.realtor/videos/risk-management- webinar-series/copyright-best-practices-to-avoid-costly-claims; https://www.nar.realtor/magazine/real-estate- news/law-and-ethics/3-rules-to-avoid-a-copyright-claim-on-the-photos-you- use#:~:text=%E2%80%9CIf%20you%20cannot%20determine%20who,could%20be%20used%20with%20photogra phers.

[18]  See Stafford Tr., at 37:10 – 39:9.

[19]  Id.

[20]  Id. at 10:5 – 10:13.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

photographs at issue to clear photographic rights, rather than on the photographers who took them — based only on a purported industry practice never reflected in any document — amounted to recklessness or willful disregard, and thus willfulness."); <u>Unicolors, Inc. v. Urban Outfitters, Inc.</u>, 853 F.3d 980, 991-92 (9th Cir. 2017) (finding willfulness where defendant "did not attempt to discover the origin of the Subject Design in this case.").

But these are certainly not the only facts here supporting a finding of willfulness. Here, Defendant refused to acknowledge its infringement or attempt to amicably resolve the matter pre-suit. Rather than do so, Defendant filed (discussed below) a facetious/frivolous Counterclaim in an effort to escape liability for its own actions. As set forth below, the Court may certainly consider a Defendant's litigation conduct and attitude in determining whether its conduct was willful/reckless.

### D. Damages

#### 1. Actual Damages

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright." <u>Lorentz v. Sunshine Health Prods.</u>, No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010); <u>Guarneros v. Denver Green Party</u>, Civil Action No. 1:19-cv-00139-RM-NYW, 2020 U.S. Dist. LEXIS 225558, at *10 (D. Colo. Dec. 2, 2020) ("One way to measure actual damages in situations where the infringer could have bargained with the copyright owner to purchase the right to use the work is to assess "what a willing buy would have been reasonably required to pay to a willing seller for plaintiff['s] work.") (quoting <u>Jarvis v. K2 Inc.</u>, 486 F.3d 526, 533 (9th Cir. 2007)).

'Actual Damages' means the amount of money adequate to compensate Plaintiff for the reduction of the fair market value of the copyrighted work caused by Defendant's infringement. The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by Defendant of Plaintiff's work. That amount may be represented by the lost license fees Plaintiff would have received for Defendant's unauthorized use of Plaintiff's work.

Live Face On Web, LLC v. Integrity Sols. Grp., Inc., 421 F. Supp. 3d 1051, 1071–72 (D. Colo. 2019). Here, Blaine proffered in his Rule 26(a)(1) Initial Disclosures that he would charge $1,500.00 per year for use of the Work.[21]

During this lawsuit, Blaine produced several prior invoices with respect to the commercial licensing of his photography.[22] The below table summarizes these invoices and their terms:

| Date | Licensee | Description | Amount | Term |
|------|----------|-------------|--------|------|
| 12/7/2006 | Charleston Area Convention & Visitors Bureau | St. Michael's Episcopal Church | $2,500.00 | 1 year |
| 2/28/2007 | Nikon, Inc. | Girl at Trinidad Carnival | $1,500.00 | 1 year |
| 2/28/2007 | Nikon, Inc. | Silhouette, Inle Lake, Burma | $1,500.00 | 1 year |
| 12/14/2007 | Anchorage Convention & Visitors Bureau | Bear cubs face to face, Alaska | $1,100.00 | 1 year |
| 11/13/2007 | Smithsonian Magazine | Camel with Taj Mahal in back, Agra, India | $1,400.00 | 1 year |
| 1/27/2009 | The Teaching Company | Great Wall of China | $1,500.00 | 60 days |
| 12/1/2011 | Future Energy Project | Blue Lagoon, Iceland | $1,199.03 | 1 year |

---

[21]   A true and correct copy of Blaine's May 19, 2022 Initial Disclosures is attached hereto as Exhibit "F."

[22]   True and correct copies of a sampling of Blaine's prior invoices, all of which were produced during this lawsuit, are attached hereto as Composite Exhibit "G."

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

| | | | | |
|---|---|---|---|---|
| 7/30/2013 | AAA Living | Arenal Volcano, Costa Rica | $1,250.00 | One-time |
| 7/21/2016 | AAA Living | Twilight View, Sitka, Alaska | $1,350.00 | 2 months |
| 8/25/2016 | Mullen Lowe | Hiker, Gros Piton, St. Lucia | $10,000.00 | 1 year |
| 5/31/2018 | Karsh & Hagan | Yoga on the Rocks, Red Rocks Amphitheater | $3,000.00 | 1 year |
| 7/1/2020 | New Zealand Story | Auckland skyline from Mt. Eden | $6,430.00 | 6 years |
| 7/23/2020 | Karsh & Hagan | Yoga on the Rocks, Red Rocks Amphitheater | $4,000.00 | 1 year |
| 12/29/2020 | Allied Products/Springbok Puzzles | Balloons over Rio Grande, Albuquerque, New Mexico | $2,000.00[23] | 4 years |
| 8/24/2021 | Andres Restrepo | Porsche speedster on California highway | $2,500.00 | 1 year |

Plaintiff submits that, consistent with Blaine's Initial Disclosures and longstanding licensing history, Plaintiff's actual damages in this lawsuit amount to a lost licensing fee of $1,500.00 per year for each year that the Work was displayed on Defendant's website. Here, Defendant displayed the Work on its website from (at latest) March 2015 through at least January 6, 2022 – i.e., at minimum ***seven (7) years***.

There is currently a Circuit split with respect to the 'lookback' period for which a plaintiff may recover damages under the Copyright Act. The Second Circuit in <u>Sohm v. Scholastic Inc.</u>, 959 F.3d 39 (2d Cir. 2020) held that a plaintiff is limited to recover damages during the 3 years prior to the filing of a complaint. The Ninth Circuit in <u>Starz Ent., LLC v. MGM Domestic TV Distribution, LLC</u>, 39 F.4th 1236 (9th Cir. 2022) and the Eleventh Circuit in <u>Nealy v. Warner</u>

---

[23] The photograph licensed to Allied Products/Springbok Puzzles is similar to the one at issue in this lawsuit and was created during the same trip to New Mexico. The license, however, is only for "print" usage – i.e., printing the photograph on a jigsaw puzzle for sale.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Chappell Music, Inc., 60 F.4th 1325 (11th Cir. 2023) rejected that approach, holding that a plaintiff may recover damages dating back to the date of infringement. In September 2023, the U.S. Supreme Court granted certiorari in Nealy to resolve the Circuit split.

The Tenth Circuit has not weighed in on the lookback period for damages under the Copyright Act. If this Court follows Sohm, Plaintiff's actual damages would thus be $4,500.00 (3 years of use). If this Court follows the rationale of Starz Ent., LLC or Nealy, Plaintiff's actual damages would thus be $10,500.00 (7 years of use).

## 2. *Statutory Damages*

Pursuant to 17 U.S.C. § 504(c)(1), a copyright owner "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(2) further provides that, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Here, Plaintiff elects to recover statutory damages in the Court's discretion.[24]

"In determining the amount of statutory damages, the district court has broad discretion to assess what is just in a particular case, considering the nature of the copyright, the circumstances of the infringement and the like, so long as the amount is neither more than the maximum nor less than the minimum." Zuffa, LLC v. Gonzalez, Civil Action No. 17-cv-01805-CMA-NYW, 2017

---

[24] Although the Complaint and the Answer contain jury trial demands, there is no right to a jury trial with respect to statutory damages. See Oppenheimer v. Johnson, No. 1:19-cv-00240-MR, 2020 U.S. Dist. LEXIS 130502, at *12-13 (W.D.N.C. July 23, 2020).

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

U.S. Dist. LEXIS 204438, at *10-11 (D. Colo. Nov. 14, 2017) (internal quotation marks omitted). Here, given the egregious nature of Defendant's conduct in demanding money from Plaintiff, refusing to remove the Work from its website, and (as discussed below) filing a frivolous Counterclaim that Blaine was still faced with when he died, Plaintiff submits that a maximum award of $150,000.00 is appropriate to demonstrate that such thumbing one's nose in the face of federal law will not be tolerated. See, e.g., Paramount Pictures Corp. v. Does, No. 2:21-cv-09317-MCS-SK, 2022 U.S. Dist. LEXIS 236227, at *10 (C.D. Cal. Dec. 9, 2022) (awarding maximum statutory damages of $150,000.00 per work for each of 138 works for a total of $20,700,000.00); Cengage Learning, Inc. v. Kien Nguyen, No. 1:20-cv-00769 (JGK) (SDA), 2022 U.S. Dist. LEXIS 212049, at *12 (S.D.N.Y. Nov. 21, 2022) ("Based upon the Court's review of the record and relevant case law, and the Court's view regarding the need for deterrence and the other Bryant factors, the Court finds that the maximum statutory award of $150,000 per infringement is appropriate in this case, given the egregious circumstances that exist."); Warrington v. Taylor, No. CV 21-06583-RGK-GJS, 2022 U.S. Dist. LEXIS 55312, at *9 (C.D. Cal. Mar. 9, 2022) (awarding maximum statutory damages of $150,000.00 per work for each of 4 works for a total of $600,000.00); Reno-Tahoe Specialty, Inc. v. Mungchi, Inc., No. 2:12-cv-01051-GMN-VCF, 2014 U.S. Dist. LEXIS 177168, at *27 (D. Nev. Dec. 19, 2014) (awarding maximum statutory damages of $150,000.00 for one work at issue).

Even if the Court is not inclined to award the maximum statutory damages, Plaintiff submits that courts typically look to a plaintiff's actual damages (here, either $4,500.00 or $10,500.00 depending on the lookback period) and award 3x – 5x to properly account for statutory damages. See, e.g. Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) (trebling the plaintiff's actual damages after

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

applying a scarcity multiplier); <u>Joe Hand Promotions, Inc. v. Alburl</u>, No. 5:18-cv-1935-LCB, 2020 U.S. Dist. LEXIS 29309, at *16-17 (N.D. Ala. Feb. 20, 2020) ("Courts have generally upheld awards of three times the amount of the proper licensing fee as an appropriate sanction to ensure that the cost of violating the copyright laws is substantially greater than the cost of complying with them."); <u>Broad. Music, Inc. v. N. Lights, Inc.</u>, 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent."); <u>Broad. Music, Inc. v. Prana Hosp'y, Inc.</u>, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); <u>Broad. Music, Inc. v. George Moore Enters., Inc.</u>, 184 F. Supp. 3d 166, 171-72 (W.D. Pa. Apr. 25, 2016) ("Statutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions."); <u>Harner v. Wong Corp.</u>, No. 1:12-cv-00820-KG-ACT, 2013 U.S. Dist. LEXIS 198954, at *44 (D.N.M. Oct. 31, 2013) ("Statutory damages are designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement.") (quoting <u>Wilson v. Brennan</u>, 666 F. Supp. 2d 1242, 1264-65 (D. N.M. 2009), aff'd, 390 F. App'x 780 (10th Cir. 2010)).

Given the circumstances of the instant case, the Court should (to the extent it does not award maximum statutory damages) apply a 5x multiplier to Plaintiff's actual damages in fashioning a statutory damages award. This would thus result in statutory damages of **<u>$22,500.00</u>**

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

(3-year lookback) or **$52,500.00** (7-year lookback).[25]

## III.    The Court Should Find that Plaintiff is Entitled to Recover Her Attorneys' Fees

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Fees under § 505 are awarded as a matter of the Court's discretion. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994). There is no precise formula for determining entitlement, but the Supreme Court has endorsed several nonexclusive factors to guide courts: "frivolousness, motivation, objective unreasonableness[,]… and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 534, n.19.

As discussed below, an award of fees to Plaintiff is absolutely warranted here. This should have been a simple/straightforward case of copyright infringement. Defendant published/displayed a photograph without Blaine's permission. It should have accepted responsibility and deferred to the Court on an award of damages. Rather than doing so, Defendant transformed this action into theater, making absurd allegations based on the whimsy of its counsel. Those allegations required the parties to engage in protracted litigation and resulted in substantial delays of these proceedings.

## IV.    Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final

---

[25]    The Court may certainly consider Defendant's litigation conduct in formulating a statutory damages award. See Harrington v. Aerogelic Ballooning, LLC, Civil Action No. 18-cv-02023-MSK-NYW, 2019 U.S. Dist. LEXIS 177929, at *14 n.5 (D. Colo. Aug. 8, 2019) ("The Court might not be as charitable as the Magistrate Judge in deciding that the litigation conduct of the Defendants should not be a basis to increase a statutory damage award against them. As noted above, a party's conduct and attitude during the litigation are factors that can be considered by the Court in fixing a damage amount.").

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. <u>Arista Records, Inc. v. Beker Enterprises, Inc.</u>, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) (entering permanent injunction against Defendant with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

Plaintiff requests the Court to enter a permanent injunction against Defendant prohibiting it from (a) directly or indirectly infringing Blaine's copyrights and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Blaine.

## V.     Plaintiff is Entitled to Final Summary Judgment on Defendant's Claims

The Counterclaim asserts three (3) claims against Blaine – all of which are predicated on the same underlying allegations that Blaine somehow 'lured' Defendant into downloading his photograph by placing his photographs across the internet on sites that do not identify Blaine as the photographer/copyright owner.  According to the Counterclaim, this was all done as part of a concerted plan to 'trap' unsuspecting victims and then 'extort' money from them.  As set forth herein, the Counterclaim is both frivolous and shameful.  While Defendant's fanciful allegations may be enough to survive a motion to dismiss, they entirely fall apart when the actual evidence (or more appropriately, the wholesale lack thereof) is considered.

### A.     *Defendant's Allegations*

Mr. Squires, the attorney who represents Defendant in this action, has filed the same Counterclaim (or affirmative claim) in a multitude of copyright infringement lawsuits with respect to Blaine.  That he is the architect/manufacturer of these claims is revealed by the fact that, in a

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

copyright infringement lawsuit brought by a completely different photographer (Christopher Sadowski), Mr. Squires' client filed the identical counterclaim therein. <u>See</u> <u>Christopher Sadowski</u> <u>v. Construction Reporter Digital Magazine LLC et al.</u>, Case No. 1:22-cv-00334 (D.N.M.), at D.E. 8. None of Mr. Squires' clients know each other and, as set forth herein, none apparently know ***anything*** about their own allegations or the 'facts' in support thereof.

The common allegations amongst all of these counterclaims were summarized by Judge Riggs in the Court's May 18, 2022 Order denying Blaine's motion to dismiss the counterclaim:

- Mr. Harrington has allowed for years his photographs to be available on websites without a copyright or ownership notice;
- Mr. Harrington intends for his photographs to be available on certain websites without copyright notice to induce innocent users to download and use his photographs;
- Mr. Harrington hires a service to track those who download and use his photographs;
- He directs his lawyers to threaten or pursue a claim for copyright infringement against those who use his photographs unless they pay an "extortionate" amount to compensate Mr. Harrington for the alleged infringement; and
- Mr. Harrington acted knowingly and willfully to implement this scheme to misuse copyright law and extort money from targets of his scheme.

<u>Harrington v. 360 ABQ, LLC</u>, No. 1:22-cv-00063-KWR-JHR, 2022 U.S. Dist. LEXIS 89884, at *3 – 4 (D.N.M. May 18, 2022). While the Court found these allegations sufficient to withstand a motion to dismiss, Defendant must actually muster evidence (rather than allegations) to withstand summary judgment. It cannot.

### 1. Blaine Allows/Intends for his Photographs to be Available on Websites Without Copyright Notice to Induce Users to Download Them

The Counterclaim asserts that Blaine 'lured' users into downloading his photographs by disseminating them throughout the internet without any notice that he claims to be the owner thereof… all as part of a diabolical plan to later pounce on the user and demand a settlement payment. These allegations, however, are ***fiction***. As a threshold matter, Defendant does not know what website its employee found the Work on and did not make any effort itself to determine the

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

identity of the website.[26]  Although the Counterclaim (paragraph 4) states that the website where the photograph was found did not identify Blaine as the photographer, Defendant is unable to identify the website or state whether Blaine was identified thereon.[27]

Defendant does not have *any* knowledge supporting the allegation (in paragraph 6) that Blaine has long been aware of his photographs appearing on websites that do not identify him as the owner thereof and takes no action to prevent such.[28]  Paragraph 6 goes on to state that Blaine knew and intended that having his photographs available on these non-identifying websites might induce innocent users to download his photographs.  Again, Defendant testified that it has no knowledge of such.[29]

Defendant likewise has zero evidence that Blaine is a 'copyright troll' who 'lures' users into downloading his photographs.  Defendant believes a copyright troll is an opportunistic copyright holder who brings claims of "dubious merit" against people for small trespasses to extract a nuisance settlement.[30]  But when pressed to identify a *single* website that Blaine purportedly placed his photographs (including the Work) without identifying himself as the owner thereof, Defendant could not do so.[31]  At most, Defendant's assertion is based on the notion that there are websites out there (whether Blaine knew about them or not) with Blaine's photographs and, because Blaine has not waved a magic wand and caused each such website to be taken down, he is engaging in a scheme to allow such websites to exist.[32]

---

[26]    See Stafford Tr., at 37:10 – 40:17; 51:21 – 56:25.

[27]    Id.

[28]    Id. at 66:22 – 67:16.

[29]    Id. at 67:17 – 68:21.

[30]    Id. at 27:1 – 29:4.

[31]    Id. at 57:11 – 58:19; 63:19 – 64:10.

[32]    Id. at 65:6 – 66:2.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Given that Defendant does not have any evidence of Blaine flooding the internet with photographs that do not identify him as the photographer, it is not shocking that Defendant likewise does not have any evidence to show that Blaine is luring people into downloading his photographs. Defendant does not even know whether the website its employee found the Work on is one where Blaine allowed the Work to be published or whether Blaine lured Defendant – or any other person/company – into downloading his photographs.

For his part, Blaine testified that he includes metadata with all of his information and copyright notices on every photograph he creates.[33]  On every page of his website (including the page on which the Work was published), Blaine included detailed copyright notices/warnings and further disabled the ability for users to 'right-click' and download his photographs.[34]  Blaine further testified that, when he posted photographs on his social media pages, he applied a watermark thereto.[35]  At most, Blaine testified to finding a daunting number of infringements of his work – "a hundred thousand" – and the staggering impracticality and inability of pursuing everything he has found, especially since many are outside the United States in countries such as China or India where U.S. copyright laws do not apply.[36]  At no point did Blaine testify that he 'lured' users into downloading his work etc. – indeed, per the above, the contrary is true.  Blaine did everything in his power to prevent users from downloading his work and, where practical, pursued infringers.  Defendant cannot seriously suggest that an individual photographer is somehow under a duty to police the internet and prevent tens if not hundreds of thousands of

---

[33]     See Blaine Tr., at 30:3 – 30:22.

[34]     Id.; see also Exhibit "H," a true and correct copy of a screenshot of Blaine's website (https://www.blaineharrington.com/image/I0000luB5K9N_j98); Exhibit "I," a true and correct copy of the security settings page from Blaine's website.

[35]     See Blaine Tr., at 31:5 – 31:14.

[36]     Id. at 54:4 – 54:22.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

infringers – domestic and foreign alike – from stealing his work.  See PK Music Performance, Inc. v. Timberlake, No. 16-CV-1215 (VSB), 2018 U.S. Dist. LEXIS 169652, at *23 (S.D.N.Y. Sep. 30, 2018) ("[C]opyright owners do not have a general duty to police their copyrights."); Parisienne v. Scripps Media, Inc., 2021 U.S. Dist. LEXIS 154960, at *12 (S.D.N.Y. Aug. 17, 2021) ("Parisienne does not have a general duty to police the internet for infringements of his Photographs.") (internal citations omitted); Minden Pictures, Inc. v. Conversation Prints, LLC, No. 20-12542, 2022 U.S. Dist. LEXIS 179602, at *9 (E.D. Mich. Sep. 30, 2022) ("Copyright holders do not have a general duty to scour or police the internet to determine if their work has been infringed."); Design Basics, LLC v. Chelsea Lumber Co., 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013) ("The Court… rejects Defendants' argument that Plaintiff was under a continuous duty to police its copyright.").

### 2. Blaine's Use of a 'Specialized' Search Service to Track Infringers of His Work

The Counterclaim asserts that Blaine "employed a specialized search service to identify persons such as 360 who have downloaded" one of his photographs.[37]  It is frankly unclear what relevance this allegation has to Defendant's claims, but the point remains that Defendant does not have any evidence in support thereof as Defendant does not know what "specialized search service" Blaine used or whether he used one at all.[38]  For his part, Blaine testified that he identified infringements in this case and the other pending cases by performing reverse image searches on Google – he takes one of his images, uploads it into Google Images (https://www.google.com/imghp?hl=en&tab=ri&authuser=0&ogbl), and then reviews 'matches'

---

[37]     See Counterclaim, at ¶ 7.

[38]     See Stafford Tr., at 69:3 – 69:16.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

that Google identifies to determine whether such is an infringement of his work.[39]

### 3. Use of Lawyers to Make "Extortionate" Demands

Finally, the Counterclaim asserts that Blaine "directed his lawyers to threaten and if necessary pursue a claim for copyright infringement against [alleged infringers] unless they paid an extortionate amount to compensate Mr. Harrington."[40] Here, Defendant takes issue with Blaine's pre-suit demand for payment of $30,000.00 from Defendant. Notably, the use of attorneys to convey a demand for an alleged violation of the law is hardly newsworthy. Blaine himself testified that he has attempted to contact infringers directly in an attempt to have his photographs removed or obtain payment and was routinely ignored.[41]

With respect to the amount of the demand, there is no dispute that the pre-suit letter sought a payment of $30,000.00 and that Defendant considers this amount to be "extortionate." But Defendant would feel the same whether such amount was $20,000.00, $10,000.00, etc. – Defendant essentially testified that a copyright owner such as Blaine can ask for no more than $200.00 (the minimum statutory damages for an innocent infringement), lest he be labeled an extortionist.[42]

There is nothing "extortionate" about Blaine's pre-suit demand. Defendant's infringement commenced after Blaine's registration of the Work, meaning that Blaine is entitled to recover statutory damages in this action. Pursuant to 17 U.S.C. § 504(c)(1), the Court (within its discretion) may award statutory damages for ***non-willful*** infringement ranging from $750.00 - ***$30,000.00*** for each copyrighted work. In a case where willful infringement is proven, the Court

---

[39]     See Blaine Tr., at 56:16 – 57:19.

[40]     See Counterclaim, at ¶ 7.

[41]     See Blaine Tr., at 57:20 – 58:20.

[42]     See Stafford Tr., at 44:10 – 45:24.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

may award **up to $150,000.00** in statutory damages for each copyrighted work. Blaine previously obtained default judgments for copyright infringement in the amounts of $98,661.72,[43] $31,340.75,[44] $26,104.15,[45] and $25,702.00.[46] In each of these cases, a federal judge independently evaluated Blaine's alleged damages (as the Court is required to do) and determined a damages award somewhere on the scale from $750.00 - $150,000.00. As set forth above, the range of statutory damages in this case (assuming a maximum is not allowed) per longstanding legal authority is generally $22,500.00 - $52,500.00.

'Extortion' does not consist of demanding payment of an amount well within the statutory limits of the Copyright Act. A copyright owner who has properly registered his work with the Register of Copyrights is vested with an absolute right to pursue legal remedies against even an 'innocent' infringer who "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." See 17 U.S.C. § 504(c)(2). If Defendant did not desire to pay $30,000.00, it was free to negotiate a settlement for its conduct. It was not free to manufacture nonsensical and fanciful claims in an effort to avoid liability.

### B. Defendant's Claims

Each of Defendant's claims rely on the above-described allegations for which Defendant cannot proffer any support. Count I of the Counterclaim purports to assert a claim against Plaintiff for a declaratory judgment of copyright misuse. Defendant alleges that Plaintiff's alleged conduct in 'luring' individuals into downloading images placed on the internet so that he can sue those

---

[43] See Harrington v. Equity Asset & Prop. Mgmt., No. 3:18-cv-00216-GPC-NLS, 2020 U.S. Dist. LEXIS 6105, at *26 (S.D. Cal. Jan. 13, 2020).

[44] See Harrington v. Tonys Pure Systems Enterprises, LLC et al., No. 4:22-cv-03607 (S.D. Tex.), at D.E. 25.

[45] See Harrington v. Frank J. Mari, No. 0:22-cv-61156 (S.D. Fla.), at D.E. 25.

[46] See Harrington v. Vintage Ways, LLC, No. 1:22-CV-0971-TWT, 2022 U.S. Dist. LEXIS 215929, at *21 (N.D. Ga. Oct. 6, 2022).

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

individuals for money damages and making 'extortionate' demands somehow "precludes his claim for copyright infringement" against Defendant.  As set forth above, however, Defendant has proffered no evidence in support of its 'luring' allegation.

Nor is the fact that Blaine has filed a large number of lawsuits somehow indicative of copyright misuse.  As explained above, Blaine is a widely-published professional photographer who has identified over one hundred thousand infringements of his work during his 45-year career – filing a large number of lawsuits or attempting to settle a large number of claims "is what the holders of intellectual property rights do when they are faced with mass infringement." Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc., 300 F. Supp. 3d 1356, 1374 (D. Kan. 2018) (D. Kan. 2018) (quoting Malibu Media, LLC v. Doe, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at *6 (N.D. Ill. June 9, 2014)); see also Home Design Servs. v. B&B Custom Homes, LLC, Civil Action No. 06-cv-00249-WYD-GJR, 2008 U.S. Dist. LEXIS 55980, at *13 (D. Colo. May 30, 2008) ("The fact that the Plaintiff has litigated claims under the federal Copyright Act and has been successful in that litigation fact does not indicate to this Court that the Plaintiff has engaged in copyright misuse.").

Defendant's claim for violation of New Mexico's Unfair Practices Act likewise fails.  The Unfair Practices Act provides a private right of action for "[a]ny person who suffers any loss of money or property" as a result of an unfair trade practice.  N.M. Stat. Ann. § 57-12-10(B).  An "unfair or deceptive trade practice" is defined as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale… of goods or services… by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person." Id. at § 57-12-2(D).  To state a claim under the Unfair Practices Act, a claimant must show that: "(1) defendant made an oral or written

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." <u>Mulford v. Altria Grp., Inc.</u>, 242 F.R.D. 615, 620-21 (D.N.M. 2007) (emphasis added). Here, Defendant has proffered nothing in support of its claim or any of its fanciful allegations.

Defendant's claim for prima facie tort likewise fails. "The theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances." <u>Schmitz v. Smentowski</u>, 785 P.2d 726, 734 (N.M. 1990). The elements of a prima facie tort are: (1) an intentional, lawful act by defendant; (2) An intent to injure the plaintiff; (3) injury to plaintiff, and (4) the absence of justification or insufficient justification for the defendant's acts. <u>Id.</u> New Mexico courts apply a balancing test to determine liability under a prima facie tort claim. <u>Hagebak v. Stone</u>, 2003-NMCA-007, ¶ 25, 133 N.M. 75, 82-83, 61 P.3d 201, 208-09 (N.M. Ct. App. 2002) ("The activity complained of must be balanced against its justification and the severity of the injury, weighing: (1) the injury; (2) the culpable character of the conduct; and (3) whether the conduct is unjustifiable under the circumstances.") (internal citation omitted). Here again, Defendant's allegations are wholly without factual support. As a result, Plaintiff is entitled to summary judgment on each of Defendant's claims.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully request that the Court enter an Order: (a) granting final summary judgment in favor of Plaintiff on her claim for copyright infringement; (b) awarding Plaintiff statutory damages as requested herein; (c) finding that Plaintiff is entitled to

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

attorneys' fees; (d) granting final summary judgment against Defendant on each of the claims asserted in the Counterclaim; and (e) for such further relief as the Court deems proper.

Dated: November 16, 2023.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza_____
      Daniel DeSouza, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that November 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza___

Daniel DeSouza